IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE:

RAINBOWS UNITED, INC.,

*Debtor.*

Case No. 09-12457
Chapter 11

**FILED ELECTRONICALLY**

**DEBTORS' EMERGENCY MOTION (A) FOR AUTHORIZATION TO (I) OBTAIN
POSTPETITION FINANCING PURSUANT TO 11 U.S.C. § 364; (ii) GRANT PRIMING LIENS AND
SECURITY INTERESTS, CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. §
364(c)(2); (iii) PROVIDE ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS
PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364,
AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

Rainbows United, Inc. ("Rainbows"), as debtor and debtor in possession (the "Debtor"),

respectfully represent:

**BANKRUPTCY RULE 4001 CONCISE STATEMENT**[1]

1.      By this motion, the Debtor requests (A) entry of interim and final orders (the "DIP

Orders") granting (I) authorization to obtain postpetition financing pursuant to sections 105, 361, 362,

364(c)(2), and 507 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) authorization

to grant adequate protection pursuant to sections 361, 363(e), 364(d)(1), and 507 of the Bankruptcy

Code to the Debtor's prepetition lenders (collectively, the "Financing Arrangement"). A summary

of the Financing Arrangement is set forth in the Priming DIP Facility (the "DIP Term Sheet"), a copy

of which is attached hereto as Exhibit A. The DIP Term Sheet provides the principal terms and

conditions for a final debtor in possession financing facility agreement (the "Final DIP Agreement")

that will be executed by the Debtor and its postpetition lenders in advance of the final hearing on this

---

[1] Capitalized terms used in this Concise Statement have the meanings ascribed to them in the
DIP Team Sheet, unless otherwise defined herein.

In Re: Rainbows United Inc.
Case No. 09-12457-11
DEBTORS' EMERGENCY MOTION (A) FOR AUTHORIZATION TO (i) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. § 364; (ii) GRANT PRIMING LIENS AND SECURITY INTERESTS,
CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. § 364(c)(2); (iii) PROVIDE ADEQUATE
PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND
364, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001
Page 2

motion (the "Final Hearing"). A copy of the proposed interim order (the "Interim Order") regarding

the DIP Financing Term Sheet is attached hereto as Exhibit B. The Interim Order is subject to

continuing review and comment by the Debtor and the DIP Lenders and the Debtor intend to present

a final form of the proposed Interim Order (and a blackline reflecting all modifications made to the

Interim Order) with the Court at the Final Hearing.

    2.      Material provisions of the Financing Arrangement are set out at the following sections

of the DIP Term Sheet and/or the Interim Order:

    (a)      Borrowing Limits. Emprise Bank and certain other lenders[2] (collectively, the

"DIP Lenders") agree to provide Rainbows, the "Debtor", as borrower, a secured priority

debtor in possession credit facility in an aggregate principal amount of $1,500,000, for a

revolving line of credit (the "DIP Facility"). DIP Term Sheet ¶Transaction, DIP Facility

Amount; Interim Order ¶1.

    (b)      Interest Rate. The postpetition loans under the DIP Facility will bear interest

at 5.0 % per annum.

    (c)      Maturity. The DIP Facility will expire no later than August 3, 2009 or

approximately twelve (12) months after the date of the commencement of the Debtor's

---

[2] The DIP Lenders are Emprise Bank, as lead participant, and SNB of Wichita, and Bank of
America as loan participants.

In Re: Rainbows United Inc.
Case No. 09-12457-11
DEBTORS' EMERGENCY MOTION (A) FOR AUTHORIZATION TO (i) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. § 364; (ii) GRANT PRIMING LIENS AND SECURITY INTERESTS,
CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. § 364(c)(2); (iii) PROVIDE ADEQUATE
PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND
364, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001
Page 3

Chapter 11 case (the "Maturity Date"), provided, that the Maturity Date may be extended an

additional six (6) months upon the DIP Lenders' written consent.

(d)    Events of Default.  To be determined by the parties and set forth in the Final

DIP Agreement.

(e)    Liens. Emprise Bank, for its own benefit and for the benefit of the DIP

Lenders, shall be granted first and priming liens on all real estate assets of the Debtor

pursuant to 11 U.S.C. §364(c)(2) for all postpetition loans and advancements made by the

DIP Lenders to the Debtor. In addition, Emprise Bank for its own benefit and for the benefit

of its prepetition loan participants[3] shall be granted a secured lien on its prepetition loan of

approximately $2,363,470

(f)    Expenses. The Debtor will pay all mortgage real estate tax recording fees and

title expenses associated with recording of any mortgages.

(g)    Conditions. The DIP Facility shall be conditioned on, among other things,

Emprise Bank's receipt of an initial Cash Flow Budget (defined below) attached as Exhibit

C, receipt of all necessary consents, finalization of satisfactory legal documentation

(including representations and warranties, covenants, events of default and other terms and

conditions deemed appropriate by Emprise Bank and the DIP Lenders  for a transaction of

---

[3] The prepetition loan participants are Emprise Bank, SNB of Wichita, Bank of America, and
Equity Bank, NA. Equity Bank decline to participate in the DIP Facility.

In Re: Rainbows United Inc.
Case No. 09-12457-11
DEBTORS' EMERGENCY MOTION (A) FOR AUTHORIZATION TO (i) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. § 364; (ii) GRANT PRIMING LIENS AND SECURITY INTERESTS,
CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. § 364(c)(2); (iii) PROVIDE ADEQUATE
PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND
364, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001
Page 4

this type), and the Bankruptcy Court's entry of interim and final orders approving the DIP

Facility.

### Highlighted Provisions under Bankruptcy Rule 4001 and Local Rule 4001-2

3.      The provisions described in Bankruptcy Rule 4001(c)(1)(B)(i)-(xi), to the

extent applicable, are set out in the DIP Term Sheet and the Interim Order:

(a)      *Grant of Priority or a Lien on Property of the Estate.* DIP Term Sheet ¶

Security; Interim Order.

(b)      *Adequate Protection or Priority for a Claim that Arose before the*

*Commencement of the Case.* Interim Order

(c)      *Determination of the Validity, Enforceability, Priority, or  Amount of a*

*Claim that Arose before the Commencement of the Case.* Interim Order

(d)      *Waiver or Modification of the Automatic Stay.* Interim Order

(e)      *Waiver or Modification of Applicability of Non-Bankruptcy Law Relating*

*to the Perfection of a Lien on Property of the Estate, or on the Foreclosure or Other*

*Enforcement of the Lien.* Interim Order

(f)      *Release, Waiver, or Limitation on any Claim or Cause of Action Belonging*

*to the Estate.* Interim Order

(g)      *Release, Waiver or Limitation on Rights under Section 506(c).* Interim

Order.

In Re: Rainbows United Inc.
Case No. 09-12457-11
DEBTORS' EMERGENCY MOTION (A) FOR AUTHORIZATION TO (i) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. § 364; (ii) GRANT PRIMING LIENS AND SECURITY INTERESTS,
CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. § 364(c)(2); (iii) PROVIDE ADEQUATE
PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND
364, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001
Page 5

        (h)    *Liens Granted on Claims Arising Under Chapter* **5**. Interim Order.

4.      In addition, the Debtor draws the Court's attention to certain material provisions of the DIP Term Sheet and in the relief set forth in the attached Interim Order:

        (a)    **Binding the Estate to Validity. Perfection. or Amount of Secured Debt.** Although the Financing Arrangement includes certain stipulations by the Debtor relating to the validity, amount and perfection of the prepetition liens, the Financing Arrangement reserves the right of parties in interest, including any committee, to file a motion or application (i) challenging the amount, validity, enforceability, priority or extent of the Prepetition Indebtedness or (ii) asserting any claims or causes of action against the Prepetition Secured Lenders on behalf of the Debtor's estates. The Interim Order reserves for 60 days after appointment the right of a statutory committee of creditors to challenge the validity or perfection of the liens securing the Prepetition Credit Agreement.

        (b)    **Waiver of Section 506( c) Surcharge.** The proposed waiver of the estate's rights will be effective only after entry of the Final DIP Order granting such relief.

        (c)    **First Lien**. The DIP Term Sheet provides for a first and prime lien for the DIP Facility as set forth below.

        (d)    **Second Lien.** The DIP Term Sheet provides for a second lien on all prepetition indebtedness of the prepetition loan participants. The prepetition loan is in the sum of $2,363,470.

In Re: Rainbows United Inc.
Case No. 09-12457-11
DEBTORS' EMERGENCY MOTION (A) FOR AUTHORIZATION TO (i) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. § 364; (ii) GRANT PRIMING LIENS AND SECURITY INTERESTS,
CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. § 364(c)(2); (iii) PROVIDE ADEQUATE
PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND
364, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001
Page 6

5.     These provisions were negotiated and are necessary for the Debtor to procure the

financing made available under the DIP Term Sheet in a sufficient amount and on a timely basis.

## Background

6.     On July 30, 2009, the Debtor commenced a voluntary case under Chapter 11 of the

Bankruptcy Code in this Court. The Debtor is authorized to continue to operate its business and

manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

## Jurisdiction and Venue

7.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.

## The Debtor's Business

8.     Rainbows is a key provider in South Central Kansas in early childhood development,

including on-site educational child care, both for typically developing children and children with

special needs. It is on the leading edge of implementing the latest, most effective therapies for

children with autism spectrum disorders. The services provided include:

(a)     <u>Targeted Case Management</u>.  Providing personal assistance in finding and

securing the programs services and financial aid for you and your child.

In Re: Rainbows United Inc.
Case No. 09-12457-11
DEBTORS' EMERGENCY MOTION (A) FOR AUTHORIZATION TO (i) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. § 364; (ii) GRANT PRIMING LIENS AND SECURITY INTERESTS,
CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. § 364(c)(2); (iii) PROVIDE ADEQUATE
PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND
364, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001
Page 7

    (b)    <u>Early Prevention for Infants & Toddlers/tiny-k</u>. Helping very young children with development delays play, share, learn and grow.

    (c)    <u>Mental Health Services</u>.

    (d)    <u>Autism Spectrum Disorder</u>.  Helping families discover and understand the uniqueness, the potential and the abilities of children with autism.

    (e)    <u>Smart Start of Butler County</u>.  Working together for affordable, quality child care, education and early childhood wellness.

    (f)    <u>Educational and Child Care</u>.  Helping your child learn and grow through trusted child care services and progressive early childhood education.

    (g)    <u>Community Based Education/Training (CBETS)</u> .  Equipping preschool children to acquire the skills necessary to succeed in kindergarten.

    (h)    <u>Specialized Foster Care</u>. Connecting children with secure, nurturing families who support their temporary or long-term needs.

    (i)    <u>Family Support Services</u>. Encouraging children to be children in fun and safe environments.

    (j)    <u>Assessments</u>. Trained early interventionists conduct Brazelton Assessments on newborns to identify how the infant responds to and interacts with his/her new environment in areas of sight, sound, light, touch, breathing, hearing and more.

In Re: Rainbows United Inc.
Case No. 09-12457-11
DEBTORS' EMERGENCY MOTION (A) FOR AUTHORIZATION TO (i) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. § 364; (ii) GRANT PRIMING LIENS AND SECURITY INTERESTS,
CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. § 364(c)(2); (iii) PROVIDE ADEQUATE
PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND
364, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001
Page 8

## **Relief Requested**

9.      The Debtor requests that the Court authorize Rainbows United, Inc., as Borrower, as

debtor and debtor in possession in this chapter 11 case, to obtain a senior secured, priority,

postpetition loan up to the aggregate principal amount of $1,500,000 from Emprise Bank, N.A. and

certain other lenders party to the DIP Facility, pursuant to the terms of this motion, the Interim Order,

any Final DIP Order (defined below), the DIP Term Sheet, and the Final DIP Agreement.

10.     Pursuant to the proposed Financing Arrangement, the postpetition financing provided

by the DIP Lenders, will:

(a)     Pursuant to section 364(c)(2) of the Bankruptcy Code, be secured by a

perfected first priority lien on all real estate of the Debtor's estate;

11.     In addition, the Prepetition Indebtedness of the Prepetition Loan Participants shall,

as additional consideration for the postpetition financing, be granted a lien securing the Prepetition

Indebtedness of $2,363,470 on the four locations set forth below. The Postpetition Indebtedness shall

be secured by a separate first mortgage on all real estate of the debtor (4 locations) in the sum of

$1,500,000. This mortgage lien shall constitute a first lien on the real property. These four locations

are as follows:

(a)     2258 N Lakeway Circle, Wichita, KS 67205

(b)     251 S Whittier, Wichita, KS 67207

(c)     3323 N Oliver, Wichita, KS 67220

In Re: Rainbows United Inc.
Case No. 09-12457-11
DEBTORS' EMERGENCY MOTION (A) FOR AUTHORIZATION TO (i) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. § 364; (ii) GRANT PRIMING LIENS AND SECURITY INTERESTS,
CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. § 364(c)(2); (iii) PROVIDE ADEQUATE
PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND
364, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001
Page 9

(d)    320 & 340 S Broadway, Wichita, KS 67202

The debtor has set forth in its bankruptcy schedules original cost on these four locations totaled in excess of $9,800,000. Due to the urgency of the filing, the debtor has not obtained appraisals of the real property. The prepetition Negative Pledge Agreement made between the debtor, Emprise Bank, and its loan participants will be substituted for a recorded mortgage of record securing all prepetition indebtedness. The Debtor submits that the Prepetition Secured Lenders are adequately protected as described herein and in the Interim Order.

12.    Pending the entry of the final order approving the DIP Facility (the "Final DIP Order"), the Debtors request that the Court (A) authorize the Debtors, on an interim basis, (i) to borrow up to $1,500,000 under the DIP Facility, (ii) to grant to the DIP Lenders the liens described herein and in the Interim Order, and (iii) to provide adequate protection in favor of the Prepetition Secured Lenders, as described herein and in the Interim Order, (B) approve the proposed notice of the final hearing to consider approval of the DIP Facility (the "Final Hearing") and the adequacy of the proposed service thereof, and (C) schedule the Final Hearing.

**The Prepetition Credit Agreement**

13.    Prior to the Commencement Date, Emprise Bank and its Prepetition Loan Participants (Bank of America, SNB of Wichita, and Equity Bank[4]) made certain loans and other extensions of credit to the Debtors pursuant to and in accordance with the terms and conditions of a credit

---

[4] Equity bank declined to participate in the postpetition financing.

In Re: Rainbows United Inc.
Case No. 09-12457-11
DEBTORS' EMERGENCY MOTION (A) FOR AUTHORIZATION TO (i) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. § 364; (ii) GRANT PRIMING LIENS AND SECURITY INTERESTS,
CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. § 364(c)(2); (iii) PROVIDE ADEQUATE
PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND
364, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001
Page 10

agreement (the "Prepetition Credit Agreement," and together with all other documentation executed

in connection therewith, the "Prepetition Loan Documents").

     14.     As of the Commencement Date, the Debtor remained obligated to Emprise Bank and

its Prepetition Loan Participants in the approximate sum of $2,363, 470.

**Debtor's Proposed Postpetition Financing Arrangements**

**A.     Need for Postpetition Financing**

     15.     The Debtor lacks sufficient funds with which to operate its business on an ongoing

basis. Absent granting of its postpetition financing, the debtor will lack adequate funds to meet short

term business operations and will cease business operations by August 14, 2009. Accordingly,

pending this Court's approval of postpetition financing, the Debtor has an urgent and immediate

need for cash to continue to operate its business. No entity holds a lien on debtor's cash or account

receivables, however, insufficient funds exist to meet operating expenses. The debtor has an

immediate need of over $1Millon in funds by the end of August, 2009, to avoid immediate and

irreparable harm. The DIP Lenders are unwilling to loan postpetition funds without the knowledge

that they will have a secured second lien on all real estate for the Prepetition Indebtedness.

**B.     Background of the Postpetition Financing Arrangement**

     16.     Prior to the Commencement Date and thereafter, the Debtor surveyed various sources

of postpetition cash to meet operating expenses, including grants or gifts from key contributors.

In Re: Rainbows United Inc.
Case No. 09-12457-11
DEBTORS' EMERGENCY MOTION (A) FOR AUTHORIZATION TO (i) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. § 364; (ii) GRANT PRIMING LIENS AND SECURITY INTERESTS,
CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. § 364(c)(2); (iii) PROVIDE ADEQUATE
PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND
364, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001
Page 11

17.    Because the Debtor was unable to find a lender or benefactor willing to extend credit

or make gifts sufficient to meet the needs of current operating expenses, the Debtor was left with no

alternative but to seek a priming postpetition financing facility.

18.    Consequently, the Debtor has determined that entering into the DIP Term Sheet with

the DIP Lenders is appropriate under the circumstances, addresses the Debtor's working capital and

liquidity needs, and should be approved.

**C.    Implementation of the DIP Term Sheet**

19.    The Debtor and the DIP Lenders engaged in extensive, arms' length negotiations with

respect to the terms and conditions of the proposed DIP Facility. These negotiations culminated in

agreement upon the proposed financing, including the form of the DIP Term Sheet. Significantly,

the DIP Term Sheet allows the Debtor to immediately use up to a $1,500,000 commitment from the

DIP Lenders, subject only to this Court's entry of the Interim Order. This sum together with all

Prepetition Indebtedness of the debtor shall be secured by the two mortgage. This commitment

should allow the Debtor to meet all of its postpetition obligations during the early stages of this

Chapter 11 case and to pay certain critical prepetition venders and parties and satisfy all cash flow

needs to allow reorganization of the debtor.

20.    The DIP Term Sheet provides that the funds available under the DIP Facility will be

available to provide the Debtor with working capital and funds for other general corporate purposes

solely in accordance with a detailed monthly budget (the "Budget").

In Re: Rainbows United Inc.
Case No. 09-12457-11
DEBTORS' EMERGENCY MOTION (A) FOR AUTHORIZATION TO (i) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. § 364; (ii) GRANT PRIMING LIENS AND SECURITY INTERESTS,
CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. § 364(c)(2); (iii) PROVIDE ADEQUATE
PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND
364, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001
Page 12

21.     Emprise Bank and it Prepetition Loan Participants are entitled, pursuant to sections

105, 361, 363, and 364 of the Bankruptcy Code, to adequate protection of their interests. As adequate

protection and as additional consideration for extension of the postpetition financing, Emprise Bank

and its Prepetition Loan Participants shall be granted a valid, perfected, security interest in and lien

on all real estate (as defined in the Interim Order).

22.     The Debtor also proposes, as adequate protection, to pay Emprise Bank and it Loan

Participants to reduce the outstanding principal balance of the Prepetition Indebtedness, all proceeds

from a sale, lease or other disposition of the Collateral (as defined in the Interim Order), after

deducting necessary costs of the Debtor in connection therewith, provided, that all of the Debtor's

obligations under the DIP Facility have been paid in full, all commitments under the DIP Facility

have been terminated.

23.     In addition, the Debtor proposes to grant and/or pay the Prepetition Secured Lenders

the following as adequate protection:

      (a)     Interest on all postpetition advancements under the postpetition credit facility;

      (b)     Interest on the Prepetition Indebtedness secured by the postpetition liens

granted herein; and

      (c)     Debtor shall waive all claims and causes of action under Chapter 5 of the U.S.

Bankruptcy Code against Emprise Bank and its Loan Participants.

In Re: Rainbows United Inc.
Case No. 09-12457-11
DEBTORS' EMERGENCY MOTION (A) FOR AUTHORIZATION TO (i) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. § 364; (ii) GRANT PRIMING LIENS AND SECURITY INTERESTS,
CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. § 364(c)(2); (iii) PROVIDE ADEQUATE
PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND
364, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001
Page 13

## The DIP Facility Should Be Authorized

24.      The Debtor has limited cash availability and without having a loan advancement of

$1,500,00.00 will be unable to continue in business.  The existing cash resources of the Debtor are

not sufficient to operate the business beyond a very short period.  Approval of the DIP Term Sheet

will provide the Debtor with immediate and ongoing access to borrowing availability to pay their

current and ongoing operating expenses. Unless these expenditures are made, the Debtor could be

forced to cease operations, which could result in irreparable harm to the Sedgwick County

community and the approximate 2,300 at risk children which the debtor serves.  The credit provided

under the DIP Facility will enable the Debtor to continue to satisfy its clients' and vendors' needs,

provide services, pay its employees, and operate its business in the ordinary course and in an orderly

and reasonable manner to preserve and enhance the value of their estates for the benefit of all parties

in interest. The availability of credit under the DIP Facility will also provide confidence to the

Debtor's creditors that will enable and encourage them to continue their relationships with the

Debtor.  Finally, the implementation of the DIP Facility will be viewed favorably by the Debtor's

employees, vendors, and clients, thereby promoting continuation of the business. Accordingly, the

timely approval of the relief requested herein is imperative.

25.      The Debtor proposes to obtain the financing set forth in the DIP Facility by providing,

inter alia, security interests, and liens pursuant to sections 364(c)(2) and (d) of the Bankruptcy Code.

In Re: Rainbows United Inc.
Case No. 09-12457-11
DEBTORS' EMERGENCY MOTION (A) FOR AUTHORIZATION TO (i) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. § 364; (ii) GRANT PRIMING LIENS AND SECURITY INTERESTS,
CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. § 364(c)(2); (iii) PROVIDE ADEQUATE
PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND
364, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001
Page 14

26.     Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor

is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1)

of the Bankruptcy Code, the court may authorize the debtor to obtain credit or incur debt (a) with

priority over any or all administrative expenses as specified in section 503(b) or 507(b) of the

Bankruptcy Code, (b) secured by a lien on property of the estate that is not otherwise subject to a

lien, or (c) secured by a junior lien on property of the estate that is subject to a lien.

27.     Section 364(d)(i) of the Bankruptcy Code further provides that the court, after notice

and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or

equal lien on property of the estate that is subject to a lien only if:

        (a)     the trustee is unable to obtain such credit otherwise; and

        (b)     there is adequate protection of the interest of the holder of the lien on the

                property of the estate on which such senior or equal lien is proposed to be

                granted.

11 U.S.C. § 364(d)(1).

28.     The Debtor's liquidity needs can be satisfied only if the Debtor is immediately

authorized to borrow up to $1,500,000,000 under the DIP Facility and to use such proceeds to fund

its operations. The Debtor has been unable to procure sufficient financing in the form of unsecured

credit allowable under section 503(b)(1), as an administrative expense under section 364( a) or (b),

or in exchange for the grant of a superpriority administrative expense claim pursuant to section

In Re: Rainbows United Inc.
Case No. 09-12457-11
DEBTORS' EMERGENCY MOTION (A) FOR AUTHORIZATION TO (i) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. § 364; (ii) GRANT PRIMING LIENS AND SECURITY INTERESTS,
CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. § 364(c)(2); (iii) PROVIDE ADEQUATE
PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND
364, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001
Page 15

364(c)(1). The Debtor has not been able to obtain postpetition financing or other financial

accommodations from any alternative prospective lender or group of lenders on more favorable

terms and conditions than those for which approval is sought herein.

29.    Having determined that financing is available only under sections 364(c) and (d) of

the Bankruptcy Code, the Debtor negotiated with the DIP Lenders extensively and at arms' length.

Provided that a debtor's business judgment does not run afoul of the provisions of, and policies

underlying the Bankruptcy Code, courts grant a debtor considerable deference in acting in

accordance therewith. *See, e.g., Bray* v. *Shenandoah Fed. Sav. & Loan Ass 'n (In re Snowshoe Co.),*

789 F.2d 1085,1088 (4th Cir. 1986); *In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 40 (BanIa. S,D.N.Y.

1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on

grounds that permit reasonable business judgment to be exercised so long as the financing agreement

does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much

to benefit the estate as it is to benefit parties in interest"); *see also In re Curlew Valley Assocs.,* 14

B.R. 506, 513-14 (Bankr. D. Utah 1981); *In re Simasko Prod. Co.,* 47 B.R. 444,449 (Bankr. D. Colo.

1985).

30.    Furthermore, section 364 does not require that a debtor seek alternative financing

from every possible lender; rather, the debtor simply must demonstrate sufficient efforts to obtain

financing without the need to grant a senior lien.    *In re Snowshoe Co.,* 789 F.2d at 1088

(demonstrating that credit was unavailable absent the senior lien by establishment of unsuccessful

In Re: Rainbows United Inc.
Case No. 09-12457-11
DEBTORS' EMERGENCY MOTION (A) FOR AUTHORIZATION TO (i) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. § 364; (ii) GRANT PRIMING LIENS AND SECURITY INTERESTS,
CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. § 364(c)(2); (iii) PROVIDE ADEQUATE
PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND
364, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001
Page 16

contact with other financial institutions in the geographic area); *In re 495 Central Park Ave, Corp.,*

136 B.R. 626,631 (Bankr. S.D.N.Y. 1992) (debtor testified to numerous failed attempts to procure

financing from various sources, explaining that "most lend money only in return for a senior secured

position").

      31.    The terms and conditions of the DIP Facility are fair and reasonable, and were

negotiated extensively by well-represented, independent parties in good faith and at arms' length.

Accordingly, the DIP Lenders and all obligations incurred under the DIP Facility should be accorded

the benefits of section 364( e) of the Bankruptcy Code.

## The Proposed Adequate Protection Should Be Authorized

      32.    Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has

an interest in property used ... or proposed to be used ... by [a debtor in possession], the court, with

or without a hearing, shall prohibit or condition such use ... as is necessary to provide adequate

protection of such interest." 11 *U.S.C.* § 363(e). Section 361 of the Bankruptcy Code delineates the

forms of adequate protection, which include periodic cash payments, additional liens, replacement

liens, and other forms of relief. 11 *U.S.C.* § 361. What constitutes adequate protection must be

decided on a case-by-case basis. *See MNBank Dallas, NA.* v. *O'Conner (In re O'Connor),* 808 F.2d

1393, 1396 (10th Cir. 1987) ("the courts have considered 'adequate protection' a concept which is

to be decided flexibly on the proverbial 'case-by-case' basis"); *Martin* v. *Us. (In re Martin),* 761 F.2d

472 (8th Cir. 1985) ("adequate protection, must ... be determined on a case-by-case basis, permitting

In Re: Rainbows United Inc.
Case No. 09-12457-11
DEBTORS' EMERGENCY MOTION (A) FOR AUTHORIZATION TO (i) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. § 364; (ii) GRANT PRIMING LIENS AND SECURITY INTERESTS,
CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. § 364(c)(2); (iii) PROVIDE ADEQUATE
PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND
364, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001
Page 17

debtors maximum flexibility in structuring a proposal for adequate protection."); *In re Shaw Indus.,*

*Inc.,* 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003) (same). The focus of the requirement is to protect

a secured creditor from diminution in the value of its interest in the particular collateral during the

period of use. *See In re Swedeland Dev. Group, Inc.,* 16 F.3d 552, 564 (3d Cir. 1994) ("The whole

purpose of adequate protection for a creditor is to insure that the creditor receives the value for which

he bargained prebankruptcy.") (internal citation omitted).

### The Automatic Stay Should Be Modified on a Limited Basis

33.    The relief requested herein contemplates a modification of the automatic stay (to the

extent applicable) to permit the Debtor to (i) grant the security interests, liens, and superpriority

claims described above with respect to the DIP Lenders, as the case may be, and to perform such acts

as may be requested to assure the perfection and priority of such security interests and liens and (ii)

implement the terms of the proposed interim and final orders.

34.    Stay modifications of this kind are ordinary and standard features of postpetition

debtor financing facilities and, in the Debtor's business judgment, are reasonable and fair under the

present circumstances.

### Interim Approval Should Be Granted

35.    Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash

collateral or obtain credit, respectively, may not be commenced earlier than fifteen (15) days after

the service of such motion. Upon request, however, the Court is empowered to conduct a

In Re: Rainbows United Inc.
Case No. 09-12457-11
DEBTORS' EMERGENCY MOTION (A) FOR AUTHORIZATION TO (i) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. § 364; (ii) GRANT PRIMING LIENS AND SECURITY INTERESTS,
CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. § 364(c)(2); (iii) PROVIDE ADEQUATE
PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND
364, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001
Page 18

preliminary, expedited hearing on the motion and authorize the use of cash collateral and the

obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's

estate pending a final hearing.

36.     Pursuant to Bankruptcy Rules 4001 (b) and (c), the Debtor requests that the Court

conduct an expedited, preliminary hearing on this Motion and (a) authorize the Debtor to use up to

$1,500,000,000 under the DIP Facility on an interim basis, pending entry of a final order, to (I)

maintain and finance the ongoing operations of the Debtor, and (ii) avoid immediate and

irreparable harm and prejudice to the Debtor's estate and all parties in interest and (b) schedule

a hearing to consider entry of a final order.

37.     The Debtor has an urgent and immediate need for cash to continue to operate.

Currently, the Debtor does not have sufficient funds with which to operate their business on an

ongoing basis. Absent authorization from the Court to obtain secured credit, as requested, on an

interim basis pending a final hearing on the motion, the Debtor will be immediately and irreparably

harmed.  Failure to meet these obligations and to provide these assurances likely would have a long-

term negative impact on the value of the Debtor's business, to the detriment of all parties in interest.

Furthermore, the lack of an interim facility would result in accelerated cash demands on the Debtor.

Accordingly, the interim relief requested is critical to preserving and maintaining the going concern

value of the Debtor and facilitating their reorganization efforts.

In Re: Rainbows United Inc.
Case No. 09-12457-11
DEBTORS' EMERGENCY MOTION (A) FOR AUTHORIZATION TO (i) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. § 364; (ii) GRANT PRIMING LIENS AND SECURITY INTERESTS,
CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. § 364(c)(2); (iii) PROVIDE ADEQUATE
PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND
364, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001
Page 19

## Waiver of Bankruptcy Rules 6004(a) and (h)

38.    To implement the foregoing successfully, the Debtor seeks a waiver of the notice

requirements under Bankruptcy Rule 6004(a) and the ten-day stay of an order authorizing the use,

sale, or lease of property under Bankruptcy Rule 6004(h).

## Notice

39.    No trustee, examiner, or creditors' committee has been appointed in this Chapter 11

case. The Debtor has served notice of this Motion on: (a) the Office of the United States Trustee for

the District of Kansas, (b) those creditors listed on the Debtor's Consolidated List of Creditors

Holding 20 Largest Unsecured Claims, (c) counsel to Emprise Bank and its Loan Participants, (d)

the U.S. Attorney's Office on behalf of the Internal Revenue Service, and (e) all parties requesting

notice pursuant to Bankruptcy Rule 2002. The Debtor submits that no other or further notice need

be provided.

WHEREFORE, the debtor respectfully requests entry of an order, substantially similar to the

proposed form of order attached hereto, granting the relief requested herein and such other and

further relief as the Court may deem just.

REDMOND & NAZAR, L.L.P.


  s/ Edward J. Nazar
Edward J. Nazar, #9845
245 North Waco, Suite 402
Wichita, Kansas 67202
316-262-8361 / 316-263-0610 fax
ebn1@redmondnazar.com
Attorneys for the Debtor

**Rainbows United, Inc.**

**<u>DIP Financing Term Sheet</u>**

New Loan:              Amount:              $1,500,000 (revolving line of credit)

                       Interest Rate:  5.0% per annum

                       Maturity:              August 3, 2010

                       Payments:              Monthly interest only
                                             Balance due at maturity

                       Collateral:              1st Mortgage on All Real Estate of Debtor
                                             Free and Clear of Other Liens

                                                     320 S. Broadway
                                                     340 S. Broadway
                                                     251 S. Whittier Road
                                                     2258 N. Lakeway
                                                     Lot 1, Block A, Koch Community Park

                       Other Terms:  Loan title policy
                                             Casualty insurance on improvements
                                             Proceeds from sale of collateral applied to loan &
                                                     credit availability reduced


Existing Loan:      Amount:              $2,326,167.22

                       Interest Rate:  5.75% (current contract rate)

                       Maturity:              August 3, 2010

                       Payments:              Quarterly interest only, per loan documents
                                             Balance due at maturity

                       Collateral:              2nd Mortgage on All Real Estate (see above)

                       Other Terms:  All pledge receipts applied to principal
                                             Interest paid current at closing of New Loan
                                             Loan title policy
                                             Casualty insurance on improvements
                                             Proceeds from sale of collateral applied to loan


EXHIBIT
A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE:

RAINBOWS UNITED, INC.,

　　　　　　　　　　　*Debtor.*

Case No. 09-12457
Chapter 11

**FILED ELECTRONICALLY**

**INTERIM ORDER UNDER 11 U.S.C §§ 105, 361, 362, 363(c), 364(c)(2), 364(d)(1) AND 364(e) AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES AND (IV) SCHEDULING A FINAL HEARING <u>PURSUANT TO BANKRUPTCY RULES 4001(b), (c) AND (d)</u>**

Upon the motion, dated July 30, 2009 (the "<u>Motion</u>") , of Rainbows United, Inc.

("<u>Rainbows United, Inc.</u>") and its affiliated debtors, each as debtor and debtor-in-possession

(collectively, the "<u>Debtor</u>") in the above-captioned case (the "<u>Case</u>") for interim and final orders

under sections 105, 361, 364(c)(2), 364(d)(1) and 364(e) of title 11 of the United States Code, 11

U.S.C. §§ 101, et seq. (as amended, the "<u>Bankruptcy Code</u>"), and Rules 2002, 4001 and 9014 of

the Federal Rules of Bankruptcy Procedure (as amended, the "<u>Bankruptcy Rules</u>"), seeking:



In Re: Rainbows United Inc.
Case No. 09-12457-11
Page 2

(1)    authorization for (a) Rainbows United, Inc (the "Borrower") to obtain up to

$1,500,000 in principal amount of postpetition financing, with a sublimit for the issuance of

letters of credit in the amount of $1,500,000 (the "DIP Financing"), all on the terms and

conditions set forth in this Order and the term sheet attached hereto, dated as of July 29, 2009

(substantially in the form attached to this Order as Exhibit A, and as hereafter amended,

supplemented or otherwise modified from time to time in accordance with the terms hereof and

thereof, the "DIP Agreement"; together with all agreements, documents and instruments

delivered in connection therewith, the "DIP Documents"), among the Borrower, Emprise Bank as

secured loan participant together with Bank of America, NA and SNB of Wichita "The Post-

Petition Lenders" or  the "DIP Lenders", and (b) Rainbows United, Inc., Debtor in this Case;

(2)    authorization for the Debtor to execute and deliver the DIP Agreement and the

other DIP Documents and to perform such other and further acts as may be necessary or

appropriate in connection therewith;

(3)    authorization for the Debtor to (a) provide adequate protection to the lenders

collectively, the "Prepetition Lenders" (Emprise Bank, Bank of America, SNB of Wichita and

Equity Bank NA), the "Prepetition Secured Parties" under the Prepetition Creditor Agreement,

Construction Loan Agreement, dated as of February 26, 2008 (as heretofore amended, restated,

modified or supplemented from time to time, the "PREPETITION Credit Agreement"; together

with all other documentation executed and delivered in connection with any of the foregoing, the

"Prepetition Loan Documents";

In Re: Rainbows United Inc.
Case No. 09-12457-11
Page 3

(4) to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of the proposed interim order annexed to the Motion (this "Order") (a) authorizing the Borrower, on an interim basis, to borrow under this Order and the DIP Agreement up to $1,500,000, (b) granting adequate protection to the Prepetition Secured Parties, (c) granting a first and second lien respectively on all real estate of the Debtor to secure the DIP Financing and the Prepetition Credit Agreement;

(5)     to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing" for this Court to consider entry of a final order (the "Final Order") authorizing the Borrower on a final basis to obtain the DIP Financing and ratify the extension hereunder under the DIP Agreement, and authorizing and approving the relief requested in the Motion to become effective pursuant to the Final Order.

The Interim Hearing having been held by this Court on July 31, 2009 and upon the record of the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefore;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.     *Disposition/Jurisdiction.* The Motion is granted in accordance with the terms of this Order. Any objections to the Motion with respect to the entry of this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled. This Court has core jurisdiction over the Cases commenced on July 30, 2009 (the "Petition Date"), this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408

In Re: Rainbows United Inc.
Case No. 09-12457-11
Page 4

and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code and Bankruptcy Rules 4001(b), ( c) (d).

2.    *Notice.* Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtor on their 20 largest unsecured creditors, Emprise Bank and the other Prepetition Secured Parties, Bank of America, the US Attorney for the District of Kansas on behalf of the Internal Revenue Service, SNB Bank of Wichita and Equity Bank as indenture trustee, all parties who have requested notice in this Case, and the United States Trustee for the District of Kansas. Under the circumstances, the notice given by the Debtor of the Motion, the relief requested therein and the Interim Hearing constitutes due and sufficient notice thereof, complies with Bankruptcy Rules 4001(b) and ( c), and no further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

3.    *Debtor's Stipulations.*  Without prejudice to the rights of any other party the Debtor admits, stipulates, and agrees that:

(a)    as of the Petition Date, the Debtor is the Borrower (as such terms are defined in the Prepetition Loan Documents) was justly and lawfully indebted and liable, without defense, counterclaim or offset of any kind, to the (I) the Prepetition Lenders (as defined in the Prepetition Credit Agreement) in the aggregate principal amount of approximately 2.3 million, plus accrued and unpaid interest thereon and costs and expenses including, without limitation, attorney's fees, agent's fees, other professional fees and disbursements and other obligations owing under the Prepetition Loan Documents ( collectively, the "Prepetition Indebtedness");

(b)    the Prepetition Indebtedness constitutes the legal, valid and binding obligations of the Debtor, enforceable in accordance with its terms, and no portion of the Prepetition

In Re: Rainbows United Inc.
Case No. 09-12457-11
Page 5

Indebtedness or any payments made to the Prepetition Lenders or applied to the obligations owing under the Prepetition Loan Documents prior to the Petition Date is subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or Claim (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law.

(c)    the Debtor hereby forever waives and releases any and all Claims (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights against each of the Prepetition Lenders, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or Chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state of federal law.

4.    *Findings Regarding The DIP Financing.*

(a)    Good cause has been shown for the entry of this Order.

(b)    The Debtor has an immediate need to obtain the DIP Financing in order to , among other things, preserve the value of the Debtor's business, make payroll and satisfy other working capital and general corporate purposes of the Debtor. The Debtor's granting of the lien(s) upon its assets is necessary to ensure that the Debtor has sufficient working capital and liquidity to preserve and maintain the value of the Debtor's estate.

(c)    The Debtor is unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes, set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code for the purposes set forth in the DIP Documents without the Debtor granting

In Re: Rainbows United Inc.
Case No. 09-12457-11
Page 6

the DIP Liens (as defined below) and the granting of mortgage liens to secure the prepetition credit

agreement under the terms and conditions set forth in this Order and DIP Documents.

(d)      The terms of the DIP Documents pursuant to this Order and the DIP

Agreements are fair and reasonable, reflect the Debtor's exercise of prudent business judgment

consistent with their fiduciary duties and constitute reasonably equivalent value and fair

consideration.

(e)      The DIP Documents and the granting of liens hereunder for all prepetition and

postpetition loans have been the subject of extensive negotiations conducted in good faith and at

arms-length among the Debtor, the DIP Lenders, and all of the Debtor's obligations and indebtedness

arising under or in connection with the DIP Financing, shall be deemed to have been extended by

the DIP Lenders and any such affiliates in "good faith", as such term is used in section 364(e) of the

Bankruptcy Code, and in all express reliance upon the protections set forth therein, and shall be

entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order

or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f)      The Debtor has requested entry of this Order pursuant to Bankruptcy Rules

4001(b)(2) and 4001(c)(2).  Absent granting the interim relief sought by this Order, the Debtor's

estate will be immediately and irreparably harmed.  Consummation of the DIP Financing and the use

of the Prepetition Collateral (including the Cash Collateral) in accordance with this Order and the

DIP Documents are, therefore, in the best interests of the Debtor's estates.

5.      *Authorization of the DIP Financing the DIP Documents.*

(a)      The Debtor is hereby authorized to enter into the DIP Documents and, in the

case of (A) the Borrower, to borrow thereunder up to an aggregate principal amount of

In Re: Rainbows United Inc.
Case No. 09-12457-11
Page 7

$1,500,000.00 pending entry of the Final Order, all in accordance with the terms of this Order, the

DIP Agreement and the other DIP Documents.

(b)     In furtherance of the foregoing and without further approval of this Court, the

Debtor is authorized and directed to perform all acts and to execute and deliver all instruments and

documents that Emprise Bank determines to be reasonably required or necessary for the Debtor's

performance of their obligations under the DIP Documents, including without limitation:

(i)     the execution, delivery and performance of the DIP Documents;

(ii)     the execution and delivery and performance of one or more amendments,

waivers, consents or other modifications to and under the DIP Documents, in each case in such form

as the Debtor, and the requisite DIP Lenders may agree, and no further approval of this Court shall

be required for amendments, waivers, consents or other modifications to and under the DIP

Documents (and any fees paid in connection therewith) not to exceed $15,000.

(iii)     the performance of all other acts required under or in connection with

the DIP Documents.

(c)     Upon execution and deliver of the DIP Documents, the DIP Documents shall

constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance

with the terms of this Order and the DIP Documents.  No obligation, payment, transfer or grant of

security under the DIP Documents or this Interim Order shall be stayed, restrained, voidable,

avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law

(including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under

any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or

In Re: Rainbows United Inc.
Case No. 09-12457-11
Page 8

similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.    *DIP Liens.* As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, mortgages or other similar documents, the following security interests and liens are hereby granted by the Debtor, for the benefit of the DIP Lenders, a first mortgage in the sum of a $1,500,000.00 lien in all real estate of the Debtor, to secure the DIP Financing together with a second mortgage lien in the amount of $2,363,740 in all real estate of the Debtor to secure the prepetition indebtedness of the Prepetition Secured Parties.

(a)    <u>First Lien On Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, Emprise Bank (for its own benefit and the benefit of the DIP Lenders) is hereby granted a valid, binding, continuing, enforceable, fully-perfected first priority mortgage lien on all real estate of the Debtor in the sum of $1,500,000.00 together with a second mortgage lien on the real estate of the Debtor to secure the debt represented by the Prepetition Credit Agreement in the amount of $2,363,740.

7.    *Remedies After Event of Default.* The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit Emprise Bank to exercise: immediately upon the occurrence of an Event of Default (as defined in the DIP Agreement), all rights and remedies under the DIP Documents, other than those rights and remedies against the Collateral as provided in clause below, and upon the occurrence and during the continuance of an Event of Default, and the giving of five business days' prior written notice to the Debtor (with a copy to counsel for the Committee and to the United States Trustee for the District of Kansas, all rights

In Re: Rainbows United Inc.
Case No. 09-12457-11
Page 9

and remedies against the Collateral provided for the DIP Documents and this Order (including, without limitation) shall cease. In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtor hereby waives any right to seek relief, including without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of Emprise Bank as set forth in this Order or the DIP Documents.

8.      *Limitation on Charging Expenses Against Collateral.*  Subject to and effective upon entry of the Final Order, except to the extent of the Carve Out, (a) no costs or expenses of administration of the Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the real estate pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Emprise Bank, as the case may be, (b) no such consent shall be implied from any other action, inaction, or acquiescence by Emprise Bank and ( c) nothing contained in this Order shall be deemed to be a consent to any charge, lien, assessment or claim against the Real Estate under section 506 (c) of the Bankruptcy Code or otherwise.

(a) Adequate Protection Liens.  As adequate protection and additional consideration for the DIP Financing, Emprise Bank (for itself and for the benefit of the Prepetition Secured Parties) is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtor of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected security interest in and mortgage lien on all Real

In Re: Rainbows United Inc.
Case No. 09-12457-11
Page 10

Estate of the Debtor as a second subordinate mortgage lien in the approximate sum of $2,363,740

to secure the debt contained in the Prepetition Credit Agreement.

(b) Fees and Expenses. As additional adequate protection, subject to section 506 (b)

of the Bankruptcy Code, the Debtor shall pay the reasonable professional fees and expenses

(including, but not limited to, the fees and disbursements of counsel, for Emprise Bank, N.A. in the

sum of $15,000 for services incurred in negotiating this loan and the creation of loan documents.

( c)  Information.  The Debtor shall promptly provide to Emprise Bank written

financial information, periodic reporting or other information that is provided to, or required to be

provided to, and such other reports, information and materials as reasonably requested.

9.    *Perfection of DIP Liens And Adequate Protection Liens.*  Emprise Bank is hereby

authorized, but not required, to file or record mortgages, notices of lien or similar instruments in any

jurisdiction, in order to validate and perfect the liens and security interests granted to them

hereunder.  Whether or not Emprise Bank on behalf of the DIP Lenders, shall, in its sole discretion,

chooses to file such financing statements, intellectual property filings, mortgages, notices of lien or

similar instruments, take possession of or control over, or otherwise confirm perfection of the liens

and security interests granted to them hereunder, such liens and security interests shall be deemed

valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or

subordination as of the date of entry of this Order.  The Debtor shall execute and deliver to Emprise

Bank all such agreements, financing statements, instruments and other documents as it may

reasonably request to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP

Liens and the Adequate Protection Liens.  All such documents will be deemed to have been recorded

and filed as of the Petition Date.

In Re: Rainbows United Inc.
Case No. 09-12457-11
Page 11

10.    *Preservation Of Rights Granted Under The Order.*

(a) If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect the validity, priority or enforceability of any DIP Obligations or the Adequate Protection liens granted to secure the pre-petition indebtedness.

Emprise Bank shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Documents with respect to all uses of all DIP Obligations and all Adequate Protection Liens.

(b) Except as expressly provided in this Order or in the DIP documents, the DIP Liens, the Adequate Protection Liens and all other rights and remedies of Emprise Bank granted by the provision of this order and the DIP Documents shall survive , and shall not be modified, impaired or discharge by (I) the entry of an order converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by an other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived any discharge as to any remaining DIP Obligations or Adequate Protection Claims.  The terms and provisions of this Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens and all other rights and remedies of Emprise Bank granted by the provisions of this Order and the DIP Documents shall continue in full force and effect until all DIP Obligations and all Prepetition Indebtedness are indefeasibly paid in full in cash.

In Re: Rainbows United Inc.
Case No. 09-12457-11
Page 12

11.    *Order Governs.*  In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

12.    *Retention of Jurisdiction.*  The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for the Debtor notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

13.    *Binding Effect; Successors and Assigns.*  The DIP Documents and the provisions of this Order, including all finding herein, shall be binding upon all parties in interest in the Case, including without limitation, Emprise Bank, any Committee, and the Debtor and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) and shall inure to the benefit of Emprise Bank and the Debtor and their respective successors and assigns, provided that, Emprise Bank shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estate of the Debtor.

14.    *Limitation of Liability.*  The Debtor shall seek in the Final Order, in addition to the protections offered to Emprise Bank in this Order, the following provisions: "In determining to make any loan under the DIP Agreement, permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the Emprise Bank and the DIP Lenders and the Prepetition Secured Parties shall not (i) be deemed to be in "control" of the operations of the Debtor; (ii) owe any fiduciary duty to the Debtor, their respective creditors,

In Re: Rainbows United Inc.
Case No. 09-12457-11
Page 13

shareholders or estates; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtor (as such terms or similar terms are used in he United States Comprehensive Environmental Response, Compensation and Liability Act of 1980 or any similar federal or state statute)."

15.     *No Impact on Certain Contracts/Transactions.*  No rights of any entity in connection with a contract or transaction of the kind listed in sections 555, 556, 559, 560 and 561 of the Bankruptcy Code, whatever they might or might not be, are affected by the provisions of this Order.

16.     *Effectiveness.*  This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

17.     *Headings.*  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Order.

18.     *Final Hearing.*  The Final Hearing is scheduled for August ____, 2009, at _____ __.m., prevailing Central time, before this Court.

19.     The Debtor shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing, including without limitation) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.  Any party-in-interest objecting to the relief sought at the Final Hearing shall serve and

In Re: Rainbows United Inc.
Case No. 09-12457-11
Page 14

file written objections; which objections shall be served upon (a) Redmond & Nazar, L.L.P., ATTN: Edward J. Nazar, Esq., 245 N. Waco, Suite 402, Wichita, Kansas 67202, Attorneys for Debtor; (b) Morris, Laing, Evans, Brock & Kennedy, Chartered, ATTN: Karl R. Swartz, Esq., Old Town Square, 300 N. Mead, Suite 200, Wichita, KS, 67202-2745, Attorneys for Emprise Bank; and (c) the Office of the United State Trustee for the District of Kansas, and shall be filed with the Clerk of the United States Bankruptcy Court, District of Kansas, in each case to allow actual receipt by the foregoing no later than August ____, 2009, at 4:00 p.m., prevailing Central time.

Dated: Wichita, Kansas

July ____, 2009

**Rainbows United, Inc.**
**Cash Flow Projection - Banks**

| | 5 Weeks Ended 8/31/2009 | Month Ended 9/30/2009 | Month Ended 10/31/2009 | Month Ended 11/30/2009 | Month Ended 12/31/2009 | Month Ended 1/31/2010 | Month Ended 2/28/2010 | Month Ended 3/31/2010 | Month Ended 4/30/2010 | Month Ended 5/31/2010 | Month Ended 6/30/2010 | Month Ended 7/31/2010 | Month Ended 8/31/2010 | Month Ended 9/30/2010 | Month Ended 10/31/2010 | Month Ended 11/30/2010 | Month Ended 12/31/2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 146,332 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 485,072 | 188,265 | 305,250 | 303,687 | 595,011 |
| **Operations** | | | | | | | | | | | | | | | | | |
| Receipts | 1,105,242 | 752,408 | 1,337,078 | 1,125,131 | 1,200,525 | 1,362,359 | 1,242,464 | 1,164,632 | 1,138,424 | 1,295,536 | 1,157,132 | 927,473 | 635,988 | 798,888 | 1,316,923 | 1,286,720 | 1,121,100 |
| Disbursements | (2,512,052) | (1,250,907) | (1,520,249) | (1,135,356) | (1,176,114) | (1,064,064) | (1,082,445) | (1,091,101) | (1,478,183) | (1,089,527) | (1,058,761) | (1,058,761) | (1,058,557) | (1,127,516) | (1,475,949) | (1,088,109) | (1,065,923) |
| Management initiatives | 0 | 91,000 | 228,000 | 125,000 | 128,000 | 133,500 | 133,500 | 133,500 | 197,500 | 133,500 | 168,500 | 170,500 | 165,500 | 135,500 | 197,500 | 133,500 | 133,500 |
| Operating cash available | (1,260,478) | (407,501) | 44,829 | 114,775 | 152,411 | 431,795 | 313,519 | 207,031 | (142,259) | 368,009 | 236,335 | 39,212 | 228,003 | (4,863) | 343,724 | 635,198 | 763,888 |
| **Financing Activities** | | | | | | | | | | | | | | | | | |
| Transfer of restricted funds | 200,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Sale of land and buildings | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 500,000 | 0 | 350,000 | 0 | 0 | 0 |
| Collections on capital campaign | 35,000 | 59,500 | 7,900 | 7,500 | 87,200 | 35,500 | 25,000 | 5,000 | 0 | 100 | 2,500 | 0 | 27,750 | 56,570 | 7,900 | 9,500 | 53,200 |
| Payment on bank loan - Emprise Bank | (35,000) | (59,500) | (7,900) | (7,500) | (87,200) | (35,500) | (25,000) | (5,000) | 0 | (100) | (2,500) | 0 | (27,750) | (56,570) | (7,900) | (9,500) | (53,200) |
| Payment on tax loan | 0 | 0 | 0 | 0 | (38,565) | (38,710) | (38,856) | (39,001) | (39,148) | (39,294) | (39,442) | (39,590) | (39,738) | (39,887) | (40,037) | (40,187) | (40,337) |
| Net borrowing (payment) on line of credit | 1,060,478 | 407,501 | (44,829) | (114,775) | (113,845) | (393,085) | (274,663) | (168,030) | 181,407 | (328,715) | (196,893) | (14,550) | 0 | 0 | 0 | 0 | 0 |
| Total financing activities | 1,260,478 | 407,501 | (44,829) | (114,775) | (152,411) | (431,795) | (313,519) | (207,031) | 142,259 | (368,009) | (236,335) | 445,860 | (39,738) | 310,113 | (40,037) | (40,187) | (40,337) |
| Ending Cash | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 485,072 | 188,265 | 305,250 | 303,687 | 595,011 | 723,351 |
| | | | | | | | | | | | | | | | | | |
| Line-of-Credit Balance | 1,060,478 | 1,467,978 | 1,423,149 | 1,308,374 | 1,194,529 | 801,444 | 526,761 | 358,751 | 540,158 | 211,443 | 14,550 | 0 | 0 | 0 | 0 | 0 | 0 |
| Tax Loan Balance | 2,589,520 | 2,589,520 | 2,589,520 | 2,589,520 | 2,550,955 | 2,512,244 | 2,473,389 | 2,434,387 | 2,395,240 | 2,355,946 | 2,316,504 | 2,276,914 | 2,237,176 | 2,197,289 | 2,157,253 | 2,117,066 | 2,076,728 |
| Emprise Bldg Loan Balance | 2,291,167 | 2,231,667 | 2,223,767 | 2,216,287 | 2,129,067 | 2,093,567 | 2,068,567 | 2,063,567 | 2,063,567 | 2,063,467 | 2,060,967 | 2,060,967 | 2,033,217 | 1,976,647 | 1,968,747 | 1,959,247 | 1,906,047 |
| **Total Loan Debt Balances:** | 5,941,165 | 6,289,166 | 6,236,437 | 6,114,162 | 5,874,551 | 5,407,255 | 5,068,737 | 4,856,706 | 4,998,965 | 4,630,856 | 4,392,021 | 4,337,881 | 4,270,393 | 4,173,936 | 4,126,000 | 4,076,313 | 3,982,775 |



EXHIBIT C

# Rainbows United, Inc.
## Cash Flow Projection - Banks

| | 5 Weeks Ended 8/31/2009 | Month Ended 9/30/2009 | Month Ended 10/31/2009 | Month Ended 11/30/2009 | Month Ended 12/31/2009 | Month Ended 1/31/2010 | Month Ended 2/28/2010 | Month Ended 3/31/2010 | Month Ended 4/30/2010 | Month Ended 5/31/2010 | Month Ended 6/30/2010 | Month Ended 7/31/2010 | Month Ended 8/31/2010 | Month Ended 9/30/2010 | Month Ended 10/31/2010 | Month Ended 11/30/2010 | Month Ended 12/31/2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 143,332 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 485,072 | 188,265 | 305,250 | 303,687 | 595,011 |
| **Operations** | | | | | | | | | | | | | | | | | |
| Receipts | 1,105,242 | 752,406 | 1,337,078 | 1,125,131 | 1,200,525 | 1,362,359 | 1,242,464 | 1,164,632 | 1,138,424 | 1,295,536 | 1,157,132 | 927,473 | 635,988 | 768,868 | 1,316,923 | 1,256,120 | 1,121,100 |
| Disbursements | (2,512,582) | (1,260,907) | (1,520,249) | (1,138,385) | (1,178,114) | (1,064,064) | (1,052,445) | (1,091,101) | (1,478,183) | (1,061,027) | (1,089,287) | (1,058,761) | (1,058,557) | (1,087,498) | (1,475,949) | (1,058,179) | (1,085,823) |
| Management initiatives | 91,000 | 101,000 | 228,000 | 126,000 | 126,000 | 133,500 | 133,500 | 133,500 | 197,500 | 133,500 | 168,500 | 170,500 | 165,500 | 135,500 | 197,500 | 133,500 | 133,500 |
| Operating cash available | (1,260,478) | (407,501) | 44,829 | 114,775 | 152,411 | 431,795 | 313,519 | 207,031 | (142,259) | 368,009 | 236,335 | 39,212 | 228,003 | (4,863) | 343,724 | 635,198 | 763,888 |
| **Financing Activities** | | | | | | | | | | | | | | | | | |
| Transfer of restricted funds | 200,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Sale of land and buildings | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 500,000 | 0 | 350,000 | 0 | 0 | 0 |
| Collections on capital campaign | 35,000 | 59,500 | 7,800 | 7,500 | 87,200 | 35,500 | 25,000 | 5,000 | 0 | 100 | 2,500 | 2,500 | 27,750 | 55,570 | 7,900 | 7,500 | 55,200 |
| Payment on bank loan - Emprise Bank | (35,000) | (59,500) | (7,800) | (7,500) | (87,200) | (35,500) | (25,000) | (5,000) | 0 | (100) | (2,500) | (2,500) | (27,750) | (55,570) | (7,900) | (7,500) | (55,200) |
| Payment on tax loan | 0 | 0 | 0 | 0 | (38,565) | (38,711) | (38,855) | (39,002) | (39,147) | (39,294) | (39,442) | (39,590) | (39,738) | (39,887) | (40,036) | (40,187) | (40,338) |
| Net borrowing (payment) on line of credit | 1,060,478 | 407,500 | (44,829) | (114,775) | (113,845) | (393,085) | (274,663) | (168,030) | 181,407 | (328,715) | (196,893) | (14,550) | 0 | 0 | 0 | 0 | 0 |
| Total financing activities | 1,260,478 | 407,500 | (44,829) | (114,775) | (152,410) | (431,796) | (313,518) | (207,032) | 142,260 | (368,009) | (236,335) | 445,860 | (39,738) | 310,113 | (40,036) | (40,187) | (40,338) |
| Ending Cash | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 485,072 | 188,265 | 305,250 | 303,687 | 595,011 | 723,550 |
| Line of Credit Balance | 1,060,478 | 1,467,978 | 1,423,149 | 1,308,374 | 1,194,529 | 801,444 | 526,781 | 358,751 | 540,158 | 211,443 | 14,550 | 0 | 0 | 0 | 0 | 0 | 0 |
| Tax Loan Balance | 2,589,520 | 2,589,520 | 2,589,520 | 2,589,520 | 2,550,955 | 2,512,244 | 2,473,389 | 2,434,387 | 2,395,240 | 2,355,946 | 2,316,504 | 2,276,914 | 2,237,176 | 2,197,289 | 2,157,253 | 2,117,066 | 2,076,728 |
| Enterprise Bldg Loan Balance | 2,291,167 | 2,231,668 | 2,223,768 | 2,216,268 | 2,129,067 | 2,093,567 | 2,068,567 | 2,063,568 | 2,063,567 | 2,063,467 | 2,060,967 | 2,060,767 | 2,033,217 | 1,976,647 | 1,968,747 | 1,961,247 | 1,906,047 |
| Total Loan Debt Balances: | 5,941,165 | 6,289,166 | 6,236,437 | 6,114,162 | 5,874,551 | 5,407,255 | 5,068,737 | 4,856,706 | 4,998,965 | 4,630,856 | 4,392,021 | 4,337,681 | 4,270,393 | 4,173,936 | 4,126,000 | 4,078,313 | 3,982,775 |