## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

IN RE:                                          )
                                                )
RAINBOWS UNITED, INC.                           )          Case No. 09-12457
                                                )          Chapter 11
           Debtor-in-Possession          )

### DISCLOSURE STATEMENT DATED JANUARY 29, 20I0

### I.  INTRODUCTORY STATEMENT

On July 30, 2009, the Debtor (hereinafter "Rainbows United, Inc.," "the Company," or the "Debtor) filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Kansas ("Court"). On February 1, 2010, the Debtor filed its Plan of Reorganization ("Plan").

Pursuant to the terms of the Bankruptcy Code, acceptance of the Plan by holders of Claims or interests may not be solicited unless, at the time of or before such solicitation, there is transmitted to the holder, a copy or summary of the Plan and a written disclosure statement approved by the Court as containing adequate information.  The Debtor has prepared this Disclosure Statement to disclose that information which, in its opinion, is necessary to make an informed evaluation of the Plan.  Defined terms not defined herein shall have meaning given to them in the Plan.  This Disclosure Statement, including the summary of the Plan contained herein, has been presented to and approved by the Court. The Court's approval does not constitute a judgment by the Court as to the desirability of the Plan, but only that the Disclosure Statement contains information sufficient to enable

disclosurestmt.v6

a typical Creditor to make an informed judgment about the Plan.

Provided that at least one (1) Class of Impaired Claims vote in favor of the Plan, if any Class or Classes of Creditors whose Claims are Impaired fails to accept the Plan, it may still be confirmed under the "cramdown" provisions of §1129(b) of the United States Bankruptcy Code. These provisions require that the Plan be fair and equitable as to the objecting Class. As to a Class of Unsecured Creditors, this means that the Class must be paid in full before any junior Class of Claims or interests receive anything of value under the Plan. This principle is sometimes referred to as the "Absolute Priority Rule."[1] As to secured Creditors, the fair and equitable rule requires that they receive the indubitable equivalent of their Claim or that they retain their lien on and receive deferred cash payments equal to the value of their interest in property of the Estate. The Debtor believes that the Plan meets these requirements and hereby requests confirmation under §1129(b) if one or more Class fails to accept the Plan.

In order to vote on a Plan, a Creditor or holder must have filed a proof of claim or interest prior to the expiration of the "Claim Bar Date" established, unless the Claim is scheduled by the Debtor and it is not stated in the schedules as disputed, unliquidated or contingent. An order establishing a Claim Bar Date was entered by the Court on

---

[1]

*Collier on Bankruptcy* (15th Ed.) at ¶1129.04[4][a][I] summarizes the "Absolute Priority Rule" as follows:
"a plan of reorganization may not allocate any property whatsoever to any junior Class on account of the member's interest or Claim in a debtor unless all senior Classes consent, or unless such senior Classes receive property equal in value to the full amount of their Allowed Claim, or the debtor's reorganization value, whichever is less."

disclosurestmt.v6

September 8, 2009 [Docket #112], establishing a Claim Bar Date on November 23, 2009.

No further filed proofs of claim are to be accepted after November 23, 2009, without order of the Court. Any Creditor scheduled as undisputed, liquidated, and not contingent, is to the extent scheduled, deemed to have filed a Claim. In order for the Plan to be accepted by Creditors, a majority in number and two-thirds (2/3) majority in amount of Claims filed, allowed (for voting purposes) and voting in each Impaired Class of Creditors must vote to accept the Plan. In order for the Plan to be accepted by interest holders, a two-thirds (2/3) majority in amount of interest allowed (for voting purposes) and voting in each Impaired Class of interests must vote to accept the Plan. If the Debtors are unable to obtain the requisite acceptances, they may be able to obtain confirmation of the Plan, despite the non-acceptance of one or more Classes pursuant to 11 U.S.C. §1129(b) as discussed more fully above.

The Debtor is a Kansas not-for-profit corporation. THE DEBTOR'S BOARD OF DIRECTORS BELIEVE THAT THE PLAN OF REORGANIZATION PROPOSED HEREIN BY THE DEBTOR IS IN THE BEST INTERESTS OF ALL CREDITORS. AS SUCH, THE DEBTOR STRONGLY URGES ALL CREDITORS TO VOTE IN FAVOR OF THE PLAN BY THE VOTING DEADLINE SET BY THE BANKRUPTCY COURT

A Creditor or interest holder may vote on the Plan by filling out and mailing the enclosed ballot which the Court has provided. The ballots must be returned by the date set by the Court; no vote received after such time will be counted nor included in the tally in

disclosurestmt.v6

any manner.  Whether a Creditor or interest holder votes on the Plan or not, such Claim

holder will be bound by the terms of the Plan if the Plan is confirmed.  You are, therefore,

urged to complete, date, sign, and promptly mail the ballot to Edward J. Nazar, Redmond

& Nazar, L.L.P., 245 North Waco, Suite 402, Wichita, Kansas 67202-1117.

NO REPRESENTATIONS OTHER THAN AS SET FORTH IN THIS DISCLOSURE

STATEMENT CONCERNING THE DEBTOR OR THE PLAN IS AUTHORIZED BY THE

DEBTOR.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR

ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS STATEMENT

SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND

SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE

REPORTED TO COUNSEL FOR THE DEBTOR WHO IN TURN SHALL DELIVER SUCH

INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE DEEMED

APPROPRIATE.

THE INFORMATION CONTAINED IN THIS STATEMENT AND THE ATTACHED

SCHEDULES HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  DUE TO THE

COMPLEXITY OF THE DEBTOR'S FINANCIAL MATTERS, THE DEBTOR IS UNABLE

TO WARRANT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT

INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE

MADE AS OF THE DATE OF THIS DOCUMENT UNLESS ANOTHER DATE IS

disclosurestmt.v6

SPECIFIED HEREIN AND THE DELIVERY OF THIS DOCUMENT DOES NOT IMPLY THAT THERE HAVE BEEN NO CHANGES IN THE INFORMATION SET FORTH HEREIN SINCE SUCH DATE.

THIS DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW OF THE PLAN BY EACH HOLDER OF A CLAIM. THIS DISCLOSURE STATEMENT IS INTENDED TO AID AND SUPPLEMENT SUCH REVIEW. THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN. THE PLAN IS THE OPERATIVE CONTROLLING LEGAL DOCUMENT. AS SUCH, IF THERE IS ANY INCONSISTENCY BETWEEN THE TERMS AND PROVISIONS OF THIS DISCLOSURE STATEMENT AND THE PLAN, THE TERMS AND PROVISIONS OF THE PLAN SHALL CONTROL.

REDMOND & NAZAR, L.L.P. ("R&N") COMMENCED REPRESENTATION OF THE DEBTOR IMMEDIATELY PRIOR TO THE PETITION DATE AS ITS BANKRUPTCY COUNSEL. ALL COUNSEL TO THE DEBTOR HAVE RELIED UPON INFORMATION PROVIDED BY THE DEBTOR IN CONNECTION WITH PREPARATION OF THIS DISCLOSURE STATEMENT. R&N HAD NO INVOLVEMENT WITH THE DEBTOR OR ITS MEMBERS PRIOR TO ITS ENGAGEMENT FOR THE FILING OF THIS BANKRUPTCY AND ANY PRE-PETITION CONSULTATION.

FORWARD-LOOKING STATEMENTS: THIS DISCLOSURE STATEMENT INCLUDES FORWARD-LOOKING STATEMENTS BASED LARGELY ON THE CURRENT

disclosurestmt.v6

EXPECTATION OF THE DEBTOR AND PROJECTIONS ABOUT FUTURE EVENTS AND FINANCIAL TRENDS AFFECTING THE FINANCIAL CONDITION OF THE DEBTOR'S OR THE REORGANIZED DEBTOR'S BUSINESS. THE WORDS "BELIEVE," "MAY," "WILL," "ESTIMATE," "CONTINUE," "ANTICIPATE," "INTEND," "EXPECT" AND SIMILAR EXPRESSIONS IDENTIFY THESE FORWARD-LOOKING STATEMENTS. THESE FORWARD-LOOKING STATEMENTS ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTIES AND ASSUMPTIONS, INCLUDING THOSE DESCRIBED BELOW UNDER THE CAPTION "RISK FACTORS." IN LIGHT OF THESE RISKS AND UNCERTAINTIES, THE FORWARD-LOOKING EVENTS AND CIRCUMSTANCES DISCUSSED IN THIS DISCLOSURE STATEMENT MAY NOT OCCUR AND ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THOSE ANTICIPATED IN THE FORWARD-LOOKING STATEMENTS. NEITHER THE DEBTOR NOR THE REORGANIZED DEBTOR NOR THEIR COUNSEL UNDERTAKE ANY OBLIGATION TO PUBLICLY UPDATE OR REVISE ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS OR OTHERWISE.

## II. HISTORY AND OVERVIEW OF THE DEBTOR

In 1972, Linda Weir Enegren founded Rainbows United, Inc. as a developmental training center for children with severe, multiple disabilities ineligible for special education services provided through the public records. When legislation in the late 1970s required public records to provide services to all children of school age regardless of their disability,

disclosurestmt.v6

Rainbows United, Inc. began focusing on delivery of early intervention services to children below school age.

In the early 1990s, legislation extended mandated special education services to children beginning at age three (3). Through a contract with Wichita Public Schools, Rainbows United, Inc. continues to serve this population. When community networks were established statewide to serve infants and toddlers with special needs in Kansas, Rainbows United, Inc. assumed lead and fiscal agency responsibility for services called *tiny-k* in Sedgwick County and later in Butler County.

Since 1994, Rainbows United, Inc. has been the sponsoring agency for Connecting Point, a project of the Sedgwick County Early Childhood Coordinating Council (the "Council"). The Council brings more than forty (40) agencies committed to young children together to provide early childhood developmental screenings, parenting resources and to connect families to available community resources.

A separate 509(a)(3) organization was formed in 2003 for the purpose of securing the long-term financial stability of Rainbows United, Inc. through an endowment and planned gifts. The Friends of Rainbows United also began in 2003 for the purpose of enriching the lives of children and families served by Rainbows United, Inc. through volunteerism, fundraising and increasing public awareness through special events that meet identified needs of Rainbows United, Inc.

Rainbows United, Inc. provides a range of service options for more than 2,200

disclosurestmt.v6

children from birth through age twenty-one (21) with special needs. Rainbows United, Inc. offers families and children services at its child care centers through the community in other centers, and educational institutions and at families' homes. Among the early intervention and special education services provided to children with disabilities at no or reduced cost to their families are hearing and vision specialty services, physical therapy, speech therapy, occupational therapy, respite care, targeted case management services that help families get connected to community resources, educational opportunities and supported family living, Autism Spectrum Disorder programs, Camp Woodchuck summer day program, specialized foster care for children, outpatient therapies and therapeutic child care.

Center based preschool classrooms include typically developing children as peer models to promote understanding and learning among children with varied abilities and needs.

Rainbows United, Inc. continues to be dedicated to identifying children with a developmental delay or identified special needs and getting them connected with the services that the child and family need to be successful and reach adulthood, and if needed, help them transition to adult development delay services between age 18-21.

## III. BANKRUPTCY OVERVIEW

The bankruptcy of Rainbows United, Inc. did not happen overnight, even though it felt that way to the Board, the public and most of the Rainbows United, Inc. staff. Instead,

disclosurestmt.v6

the bankruptcy happened over a two-year period of time. A thorough analysis of financial records indicates that no funds were embezzled or stolen from the Company.

The significant events that led to the bankruptcy are:

1.  Feeling various financial pressures as federal, state and local funding utilized by Rainbows United, Inc. began to cut their funding allocations to the programs, the President/Chief Executive Officer of Rainbows United, Inc. continued delivering services and even increased programs. Therefore, revenues were going down, but costs remained the same or rose slightly and oversight of the spending was limited. Rainbows United, Inc. began to lose money by overspending a little in the early months, and that number increased more as time went on resulting in an average of $200,000 monthly loss.

2.  As revenues continued to decrease and cash flow became an issue, the Chief Financial Officer began to move money from one program to pay for another. As times got worse, more of this moving of funds had to take place to pay the bills and he improperly utilized additional sources, including some donations to the new building fund. At some point in time, the moving of money between programs was not enough to cover the bills. In January, 2008, the Chief Financial Officer began to delay payments and then stopped paying the federal employment taxes owed to the Internal Revenue Service to fund the cash shortfall. Eventually, these funding sources were not enough to make up the mounting shortfall, and other vendors

In the United States Bankruptcy Court for the District of Kansas
IN RE: Rainbows United, Inc.
Bankruptcy Case No. 09-12457-11
Disclosure Statement Dated January 29, 2010

Page 10

began to be among those not paid.

3.      While some staff knew bits and pieces of the story, there were only two (2) who appeared to have the information and were not ensuring policies were being followed.  The President/Chief Executive Officer and the Chief Financial Officer were the only people who had access to operational information of Rainbows United, Inc. to really know what was happening.  In addition, the President/Chief Executive Officer did not ensure that the policies and procedures of Rainbows United, Inc. were being followed by the Chief Financial Officer, including division of duties and other best practice accounting safeguards.

4.      As things got worse, the Chief Financial Officer began making "adjustments" to the financial information so the Board would not know the severity of the situation.  This resulted in the Board being shown detailed, but inaccurate financial information at Finance Committee and Board meetings.  During this time, Rainbows United, Inc. changed its fiscal year by six (6) months.  At the recommendation of the Chief Financial Officer, the Board agreed to an 18-month audit, rather than a 6-month and a 12-month audit.  The Chief Financial Officer then delayed the audit further.  The last six (6) months of the tenure of the Chief Financial Officer things were so quickly spiraling down that no entries were made to the accounting system general ledger at all, yet the Executive Committee and the Board received financials every month which showed viable operations and cash in the bank.

disclosurestmt.v6

5.      On July 6, 2009, the financial crisis intensified when it was discovered that payroll could not be made because of insufficient funds. The Chief Financial Officer disclosed this situation to senior management and immediately resigned. This concluded a 2-year period of deception and mismanagement by the Chief Financial Officer coupled with the inattentiveness and lack of oversight by the President/Chief Executive Officer. Remaining operating staff were thus confronted a financial crisis without financial assistance, while continuing serving the children with special needs. Upon discovering the severity of the financial situation, the Board acted decisively employing outside experts and retaining Kere Noel, CPA as acting Chief Financial Officer.

Through all of this, the children with special needs have been served by a reduced team of dedicated staff. Despite the financial irregularities, Rainbows United, Inc. provided the same quality service it pledged and provided to the community for years. This deep financial hole dug over two (2) years has affected many families, employers, vendors and partners, and ultimately, the community.

## IV. PLAN OF REORGANIZATION

Immediately following the filing of the Chapter 11 bankruptcy of Rainbows United, Inc. on July 30, 2009, more than seventy (70) staff members were laid off, two (2) early care and education centers were closed and child care services for children birth to age three (3) were discontinued, and those children with special needs provided services in

disclosurestmt.v6

other settings.  During this transition, children birth through age twenty-one (21) who qualify continued to receive therapies and special education services through Rainbows United, Inc.  Several of these children receive their services at a location in the community or at their homes.  Services provided at the child care centers were significantly reduced for typically developing children.

Immediately prior to the filing of the bankruptcy, Kere Noel, CPA was engaged as acting Chief Financial Officer.  Mr. Noel reports directly to the Board of Directors of Rainbows United, Inc.  Under the direction of Mr. Noel, accounting staff and corporate volunteers began the task of restating the inaccurate financial statements of 2007 through July, 2009, re-entering data into the general ledger, while implementing procedures that had not been followed, as well as new procedures for tracking cash flow and expenses moving forward.

On Monday, August 17, 2009,  the entire staff of Rainbows United, Inc. met off site for All-Staff Inservice Day.  Staff was updated on the current status of Rainbows United, Inc. by Board members who introduced Hale Ritchie as the Chief Restructuring Officer. Mr. Ritchie spoke, answered questions, and a new culture of transparency was pledged. In addition, the Board has adopted updated mission and vision statements based on staff and board planning and continued focused communications with partners and stakeholders.

The Board of Directors of Rainbows United, Inc. has been instrumental in helping re-establish business practices and procedures while providing hands-on oversight to the

disclosurestmt.v6

restructuring process. Chairman of the Board, Steve Cox, of Cox Machine has led the Board through the challenging time, while Jeff Jabara, Spirit AeroSystems, stepped up to serve as the new Board Treasurer overseeing the financial aspects. Board member Derek Park, with The Law Offices of Derek Park, LLC, has been instrumental in development of a Business Ethics Policy. Vice Chair, Dan Drake, Liberty Asset Management, has taken a lead role in coordinating the sale of the buildings.

The financial policies and systems that were in place, but not followed, have been reinstated.  These multiple checks and balances have been re-established and are now being followed with multiple oversight points.

All accounts since 2007 have been rebuilt and are closely monitored and maintained to show current cash flows.  Future projections for cash flow have helped shape decisions for programs and services for moving forward.  Payroll procedures have been refined to include proper documentation of absences, expenses and systems for submitting timesheets in a timely manner.

Deb Voth, Chief Operations Officer, is now responsible for ensuring that all policies and procedures are being followed, including division of duties.  The Board, especially the Finance Committee, provides additional oversight and regularly checks on procedural, as well as financial information.  Staff are currently being trained and cross trained to ensure that financial procedures, checks and balances are being followed.

The Board has approved an Ethics Policy that includes a "Whistle Blower"

disclosurestmt.v6

procedure.

With the financial history rebuilt, the Company's 18-month audit of January, 2007 through June, 2008 is expected to be complete in early 2010 and the fiscal year audit of July, 2008 through June, 2009 to follow.  Audits will result in additional recommendations to safeguard financial data that will be implemented.   A required 401(k) audit was completed in October, 2009, with no significant findings.

Chief Restructuring Officer, Hale Ritchie, has volunteered his time to assist with the Company's Reorganization Plan and efforts to build the long-term financial viability of the organization. He joins Ms. Voth in open communication and ongoing collaboration with agency funders including Wichita Public Schools, United Way of the Plains, Kansas Social and Rehabilitation Services (SRS) and Sedgwick County. Contracts with both Sedgwick County and Wichita Public Schools were both approved for 2009 – 2010 period. Approval to reallocate 2009 funds to underfunded related programs and to meet new needs in 2010 was given by United Way of the Plains on Thursday, December 17, 2009.

A contract has been signed with Greenbush Southeast Education Service Center that allows Federal Categorical Aid funding to be accessed for Sedgwick County infant and toddler services. These arrangements are made possible through a new web-based system with the Kansas State Department of Education that allows agencies to access Categorical Aid through a Local Education Agency. A similar arrangement is in place with the Butler County Special Education Cooperative for Butler County.

disclosurestmt.v6

A group of investors purchased the 3-story building at 340 South Broadway for $1 million at a closing on Tuesday, December 22, 2009. A contract has been made on the property at 251 South Whittier with closing projected for the first quarter of 2010. Consolidation of center-based services for children three through age five at Kids' Point, 3223 North Oliver Avenue was complete January 4, 2010. The Company will eliminate the lease of space at 2901 West Taft Street and move Respite, Camp Woodchuck, Latch Key and Family Support Services to Kids' Cove at 2259 North Lakeway Circle by March, 2010. Administrative staff from 340 South Broadway, along with Targeted Case Management and Specialized Foster Care will relocate to Kids' Point. Infant/Toddler Services will most likely relocate to Kids' Cove. The rented space for Smart Start of Butler County in Augusta has been eliminated and program personnel have been incorporated in the Company's office located in El Dorado that serves Butler County.

The contents of the facilities and items in the warehouse space that are no longer needed for ongoing operations will be auctioned off and the proceeds kept in accordance with the Wichita School District contract. An auctioneer has been contracted and sale dates are pending for early 2010.

Targeted Case Management staff have been downsized and case loads of 70 or more children per case manager are now in place. Families whose need for respite hours and supportive supplies are greater than their Home and Community Based Services (HCBS) funding will need additional funding.

disclosurestmt.v6

A cost analysis of all past and current programs of Rainbows United, Inc. has been completed. Funding streams have been identified and projections for future cash flows have been estimated for the next twelve (12) months. A program identified with significant loss will be eliminated and an additional seventeen (17) people have been laid off, including Vice President of Special Projects.  Staffing overall is down to 323 after layoffs from the 450 employees last summer.  Procedures are in place to monitor ongoing program costs. Options for outsourcing billings and insurance are under consideration. Center based child care rates have been increased beginning January 1, 2010.

Six (6) busses of Rainbows United, Inc. will be returned to the State immediately for a one-time rebate.  Three (3) busses will be sold at auction and another seven (7) busses will be turned into the State for additional one-time rebates in 2010.

The Board is asking Chief Operations Officer, Ms. Voth, to lead the organization, ensuring continuity in programs and knowledge, while also providing a new leadership model of openness and fiscal transparency and restraint. Kere Noel, CPA has assumed the position of permanent Chief Financial Officer with the Board voting to allow this position to be filled only by a Certified Public Accountant. Mr. Ritchie will continue to volunteer his time as Chief Restructuring Officer through the next few months working closely with Ms. Voth, all staff and the Board.

Through the Reorganization Plan, Rainbows United, Inc. will make one hundred percent (100%) payments to creditors.  Those payments will occur over a multi-year period

disclosurestmt.v6

and the largest creditors have agreed to these plans.

The Board has elevated the need for private funding.  An immediate fundraising campaign is underway, as well as plans for a major campaign drive once the Reorganization Plan has Court approval.  Letters to past and present families, donors, employees and friends have been sent requesting end of the year donations.

Rainbows United Charitable Foundation, Inc. is overseeing the management of donations and will distribute money to Rainbows United, Inc.  This separate 509(a)(3) organization was founded in 2003 to provide the necessary financial security to ensure that our community's children of tomorrow will receive the individual help they need to succeed and thrive. Private fund-raising is ongoing with a new major gift campaign planned for March 2010.

While Rainbows United, Inc. will be a smaller, more focused agency, the Board and staff have worked to ensure that the quality programs will continue and families will continue to receive high quality services in a fiscally responsible manner. These changes have affected families, employees and partners all of which Rainbows United, Inc. deeply regrets. As the new era of Rainbows United, Inc. begins, it pledges to continue serving children with special needs and their families and partnering with other organizations to ensure that together these families and children receive services when needed – ensuring a brighter, stronger future for all.

disclosurestmt.v6

## V.  LEGAL ACTIVITY SUBSEQUENT TO FILING BANKRUPTCY

The Debtor filed bankruptcy on an emergency basis on July 30, 2009.  The filing was necessitated by the lack of liquidity in the Company to meet current operating expenses, including payroll.  Due to the assistance of Emprise Bank, the Debtor was able to obtain post-petition financing and received a post-petition loan commitment for $1.5 million dollars.

The Debtor filed a Motion for Authorization to Approve the Post-Petition Financing [Docket #3].  The condition for the post-petition financing required a "roll up" or cross-collateralization of pre-petition indebtedness with the post-petition loan.  The Debtor offered real estate mortgages upon virtually all of its real property to secure the $1.5 million dollars of post-petition lending, together with its pre-petition loan of $2.3 million dollars.[2]

The Court held a hearing on July 31, 2009, granting the motion for post-petition financing.  The order that was granted as on an interim emergency basis, subject to notice to all Creditors and parties in interest.

Subsequent thereto, a number of objections were filed to the post-petition financing, including that of South Central Kansas Education Service Center ("South Central") and LaFarge North America, Inc. ("LaFarge") [Docket #60 - objection of South Central and Docket #76 - objection of LaFarge].

The Debtor, together with South Central, were able to reach an accord and

---

[2]  The pre-petition loan obligation was technically unsecured, although subject to a negative pledge or covenant to not encumber the property.

disclosurestmt.v6

settlement concerning the objection of South Central [Docket #133].  The compromise and settlement provided for a liquidation of the Claim of South Central, together with installment payments to repay.  The agreement provided for a partial assumption of the executory contract of South Central, together with installment payments on the remaining indebtedness.

The Debtor was also able to enter into a settlement with LaFarge, providing for stipulated treatment to LaFarge consistent with other Unsecured Creditors [Docket #194].

Subsequent to the compromise and settlement, the Internal Revenue Service filed an objection to the proposed settlement with South Central.  Ultimately, the Debtor was able to achieve a settlement with the Internal Revenue Service concerning the South Central settlement [Docket #214] which provided for the settlement with South Central to be approved resolving all contested matters before the Court.

The Debtor was successful in selling its business location at 340 South Broadway to 329, LLC.  The sale was for a purchase price of $1 million dollars in a motion to sell filed by the Debtor [Docket #192].  The Court has approved the sale to 329, LLC and the Debtor is in the process of closing this transaction.  The proceeds from this sale will be used to reduce the indebtedness due Emprise Bank and its Loan Participants.  A sale is currently pending providing for the sale of the Whittier property and the sale proceeds will be applied to the Emprise Bank post-petition loan.

Material to the Debtor's Plan and settlement with parties is the Debtor's

disclosurestmt.v6

representation that Unsecured Creditors will receive payment in full over an 8-year period of time.  The Debtor has also reached an agreement with the Internal Revenue Service providing for payment of the outstanding principal and interest due it over a 5-year amortization period consistent with the provisions of 11 U.S.C. §1129(a)(9)(C).

## VI. LIQUIDATION ANALYSIS

Pursuant to Section 1129(a)(7) of the Bankruptcy Code, if each Class of Impaired Claims does not vote unanimously to accept the Plan, then the "best interests of Creditors test" requires the Bankruptcy Court to find that the Plan provides to each holder of a Claim in each Impaired Class a recovery on account of such holder's Claim that has a value at least equal to the value of the distribution that each such holder would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

If the Debtor's Chapter 11 case was converted to a Chapter 7 liquidation proceeding, then the Debtor's business operations would immediately cease and the Debtor's assets liquidated by a Chapter 7 trustee.  The Debtor has formulated a Plan based upon the repayment in full of the principal amount of Unsecured Claims.  As a result, the Debtor has not included a liquidation analysis to this Plan.

All real estate assets of the Debtor are secured to Emprise Bank and its Loan Participants.  The unsecured assets include certain motor vehicles and the furniture, fixtures, equipment and motor vehicles of the Debtor.  The Debtor has not undertaken an analysis of the furniture, fixtures and equipment, however, the Debtor's balance sheets

disclosurestmt.v6

value the furniture, fixtures, equipment and motor vehicles with a total book value of $456,488.00 (cost less depreciation). For purposes of the liquidation analysis, the Debtor subscribes to this valuation. The Debtor's Plan provides for payment in full of all allowed Claims, which negate the necessity of liquidation of the assets. The Debtor believes that the values contained herein are the book values (cost less depreciation) of the Debtor and the actual liquidation value may vary significantly and may, in part, be less than the total amount of Claims in this case.

The Debtor believes that the Plan provides for a significant higher return to holders of Unsecured Claims of the Debtor because no statutory Chapter 7 trustee fees will be assessed under 11 U.S.C. §326.

The Debtor has undertaken a cursory examination of potential preferences. Significant potential preferences would exist in this case against various third party vendors, however, due to the fact that this is a full payment Plan, no action is either necessary or warranted under the Bankruptcy Code for recovery of the preferences. All preference Claims are hereby waived under the terms of the Disclosure Statement and Reorganization Plan.

## VII. MANAGEMENT

The Debtor is a Kansas not-for-profit corporation. The Debtor has an active volunteer Board of Directors consisting of approximately twenty (20) individuals. Day-to-day operations of the Debtor are managed by Deb Voth, Chief Operating Officer, and Hale

disclosurestmt.v6

Ritchie, Chief Restructuring Officer.  Kere Noel, CPA acts as the Chief Financial Officer.

Mr. Ritchie serves on an interim basis until a new Chief Executive Officer can be found.  Mr. Ritchie supplants the services performed by Lorraine Dold, the former Chief Executive Officer, whose employment was terminated by the Board of Directors on August 20, 2009, after the filing of the bankruptcy.

Mr. Noel replaces Scott Richards, the former Chief Financial Officer, whose resignation was accepted on or about July 6, 2009.

The Debtor intends to hire a new Chief Executive Officer post-confirmation.  A determination of the salary of such Chief Executive Officer has not been made.  The current salaries of these key employees are as follows:

| | |
|---|---|
| Hale Ritchie - Chief Restructing Officer | $       0.00 |
| Deb Voth - Chief Operating Officer | $85,215.00 |
| Kere Noel, CPA - Chief Financial Officer | $80,000.00 |

It is the intention of the Debtor that Ms. Voth and Mr. Noel will continue in employment of the Debtor.  Mr. Noel was hired upon an interim basis, but has agreed to accept to perform services on an ongoing basis post-confirmation.

## VIII.  FINANCIAL INFORMATION

Attached hereto as **Exhibit A** is a 3-year historical cash flow report encompassing the full years 2007 and 2009 and post-petition projections for the years 2010 through 2013.

disclosurestmt.v6

## IX. SUMMARY OF CLAIMS

A total of fifty-four (54) Claims have been filed in this case. The Claim filed by Matrix Media, Inc., dba Wichita Times was late filed.

The Claims filed include the following priority Claims under 11 U.S.C. §507:

1.      Claim #3 of the Internal Revenue Service in the priority sum of $2,419,546.60;

2.      Claim #11 of the Kansas Department of Revenue in the priority sum of $48,000.00;

3.      Claim #43 of South Central in the priority sum of $228,613.06

4.      Claim #10 of the Sedgwick County Treasurer in the amount of $282.13.

The Claim of South Central seeks a priority determination of $228,613.06. Pursuant to an order of the Court [Docket #214], South Central is to receive an initial distribution of $100,000.00, three (3) monthly payments of $10,000.00 each payable on December 15, 2009, January 15, 2010, and February 15, 2010, and a final payment of $20,000.00 on March 15, 2010. South Central is to receive an estimated sum of $39,306.53 upon the Effective Date of the Plan (sixty (60) days after confirmation). The remaining estimated sum of $39,306.53 will be added to the estimated unsecured balance of the Claim of South Central of $273,017.12 and amortized over eight (8) years. No interest will be paid on the Claim of South Central. South Central will be separately classified.

disclosurestmt.v6

The Internal Revenue Service received a lump sum payment of $50,000.00 in November, 2009, which was applied to the last quarter of unpaid employee withholding taxes.

The Kansas Department of Revenue filed a proof of claim (Claim #11) setting forth a priority Claim in the sum of $48,000.00 and an Unsecured Claim in the amount of $6,600.00. This Claim was filed on an estimated basis for unpaid withholding tax due for the period of time from May, 2009 thru the end of July, 2009. The Debtor has scheduled this tax obligation as a contingent amount in the amount of $49,973.00. The Debtor subsequently filed tax returns setting forth a priority obligation of $39,563.09. The Debtor will pay the sum of $39,563.09, plus interest. Any amount in excess of this sum will be objected to by the Debtor. The Kansas Department of Revenue has agreed to forego its Unsecured Claim in the sum of $6,600.00.

The Debtor noticed in Schedule E of its bankruptcy schedules the Claim for the Internal Revenue Service for employee withholding taxes in the contingent amount of $2,347,676.00. The Internal Revenue Service filed a proof of claim (Claim #3) as amended on November 4, 2009, in the total sum of $3,177,499.67. This Claim consists of a priority tax obligation in the sum of $2,419,546.60, together with a general unsecured Claim for penalty in the sum of $757,953.07. The Debtor believes the priority portion of the Internal Revenue Service Claim is $2,309,670.23 and in the event negotiation cannot reconcile the difference between the amount calculated by the Debtor and the Internal

Revenue Service Claim, the Debtor will seek a Court determination of the proper amount.

The Internal Revenue Service agrees and consents that its general Unsecured Claim, which consists of the penalty to date of petition on its unsecured priority claim (with interest thereon), will not be paid so long as the Debtor remains current on its Plan payments.  The Internal Revenue Service does not abate said penalties and expressly reserves the right to collect the penalties owed under the general Unsecured Claim in the even that the Debtor defaults on its Plan payments.

Claim #10 of the Sedgwick County Treasurer in the sum of $282.13 will be paid in accordance with the Claim as filed.

The Debtor scheduled a series of unreimbursed employee business expenses entitled to a priority under 11 U.S.C. §507.  These Claims were satisfied pursuant to Court order subsequent to the bankruptcy filing and prior to the publication of this Disclosure Statement.   The claims that have been satisfied are set forth in a separate column adjacent to the original Claim scheduled.  The Claims are:

| Name | Original Scheduled Claim | Status of Claim or Satisfied | Remaining Due |
|---|---|---|---|
| Amy Farrell | $32.00 | Paid | $0.00 |
| Ashlee D. McCoy | $126.00 | Paid | $0.00 |
| Beth Nimmo | $48.00 | Paid | $0.00 |
| Brooke Medlam | $270.00 | Paid | $0.00 |
| Calley Z. Kinchion | $109.00 | Paid | $0.00 |

disclosurestmt.v6

| | | | |
|---|---|---|---|
| Cara Phillips | $11.00 | Paid | $0.00 |
| Carolyn Hummel | $11.00 | Paid | $0.00 |
| Donna Delaney | $6.00 | Adjusted | $0.00 |
| Donna E. Hoch | $6.00 | Paid | $0.00 |
| Erin E. Purdon | $72.00 | Paid | $0.00 |
| Gina Rader | $116.00 | Paid | $0.00 |
| Ginger K. Hopper | $353.00 | Paid | $0.00 |
| Guadalupe Nave | $31.00 | Paid | $0.00 |
| James Garrett | $49.00 | Paid | $0.00 |
| Janice S. Dixon | $53.00 | Paid | $0.00 |
| Jessica Humphries | $22.00 | Paid | $0.00 |
| Jessica Peralta | $40.00 | Paid | $0.00 |
| Karen Marshall | $11.00 | Paid | $0.00 |
| Katherine Demott | $80.00 | Paid | $0.00 |
| Kerri K. Dixon | $154.00 | Paid | $0.00 |
| Kevin Ross Hays | $278.00 | Paid | $0.00 |
| LaDonna S. Samuel | $119.00 | Paid | $0.00 |
| LaWana S. Wallace | $93.00 | Paid | $0.00 |
| Leah Doyle | $112.00 | Paid | $0.00 |
| Lee Price | $219.00 | Paid | $0.00 |
| Leslie Stevens | $21.00 | Paid | $0.00 |
| Lorraine Dold | $83.00 | Paid | $0.00 |
| Margaret A. Domnick | $10.00 | Paid | $0.00 |
| Maria M. Garrett | $59.00 | Paid | $0.00 |

disclosurestmt.v6

| | | | |
|---|---|---|---|
| Michele I. Marshall | $30.00 | Paid | $0.00 |
| Michelle D. Goldston-Templeton | $338.00 | Paid | $0.00 |
| Mona E. Riggs | $66.00 | Paid | $0.00 |
| Paige Threlkeld | $228.00 | Paid | $0.00 |
| Patricia L. Unruh | $22.00 | Paid | $0.00 |
| Patricia Smith | $10.00 | Paid | $0.00 |
| Patti Horning | $10.00 | Paid | $0.00 |
| Rebecca L. Erickson | $20.00 | Paid | $0.00 |
| Rebecca S. Weber | $36.00 | Paid | $0.00 |
| Samantha Kelly | $26.00 | Paid | $0.00 |
| Sarah A. Linn | $42.00 | Paid | $0.00 |
| Sarah McDaniel | $8.00 | Paid | $0.00 |
| Sharri A Penrod | $159.00 | Paid | $0.00 |
| Shirley Fisher | $34.00 | Paid | $0.00 |
| Stephen C. Roecker | $56.00 | Paid | $0.00 |
| Tanita Caldwell | $45.00 | Paid | $0.00 |
| Victoria Smith | $16.00 | Paid | $0.00 |
| Virginia Voegeli | $85.00 | Paid | $0.00 |
| Williams Billingsley | $26.00 | Paid | $0.00 |
| **Total** | $3,851.00 | | $0.00 |

The Debtor, therefore, believes all of these Claims are satisfied. These creditors will not participate as creditors or shall vote on the Reorganization Plan because of the satisfaction of their Claims.

disclosurestmt.v6

The Debtor further scheduled the following Claims as Unsecured Claims on the schedules of the Debtors and any amendments thereto. The Debtor has obtained orders of the Court allowing satisfaction of a portion of the Claims in the ordinary course. The status of the Claims is set forth below, including a partial reconciliation of Claims allowance or objection:

| Name | Scheduled Amount | Paid or Unpaid or Additional Sums Claimed Due | Amount Due, Allowed, Objected or Subject to Verification |
|---|---|---|---|
| Adaptiemall.com, LLC | $2,947.00 | Paid | $0.00 |
| ADT Security Services, Inc. | $151.00 | Paid | $0.00 |
| Advacare Medical Corp | $4,825.00 | Paid | $0.00 |
| Advance Insurance Company | $6,933.00 | Paid | $0.00 |
| Advocate Care Services, Inc. | $2,717.00 | Paid | $0.00 |
| Aimee VanWinkle | $245.00 | Paid | $0.00 |
| AIU Holdings | $5,895.00 | Paid | $0.00 |
| Allen Gibbs & Houlik, LC | $5,398.00 | Unpaid | Claim #40 $5,398.18 Allow $5,398.18 |
| Alltel | $3,034.00 | Paid | $0.00 |
| American Electric Company | $52.00 | Unpaid, plus additional charges due | Claim #26 $830.68 Allow $830.68 |

disclosurestmt.v6

| Ampco System Parking | $525.00 | Unpaid | Allow $525.00 |
|---|---|---|---|
| Amy Finley | $230.00 | Paid | $0.00 |
| Angela Henderson | $353.00 | Paid | $0.00 |
| Angie Elam | $992.00 | Paid | $0.00 |
| Aquarium in Old Town, Inc. | $109.00 | Unpaid | Allow $109.00 |
| AT&T | $84.00 | Paid | $0.00 |
| AT&T Advertising & Publishing | $569.00 | Unpaid | Allow $569.96 |
| Barrett DeBusk | $310.00 | Unpaid | Allow $310.00 |
| Batteries Plus | $748.00 | Unpaid | Allow $747.91 |
| Benith MacPherson | $1,231.00 | Unpaid | Allow $1,231.00 Object to Claim #55 in the amount of $2,913.00 |
| Birch Communications | $690.00 | Paid | $0.00 |
| Black Hills Energy | $123.00 | Paid | $0.00 |
| Blue Cross Blue Shield of KS | $72,138.00 | Paid | $0.00 |
| Board Source | $99.00 | Unpaid | Allow $99.00 |
| Bobby L. Robinson | $405.00 | Paid | $0.00 |
| Brian/Tabitha Johnson | $36.00 | Paid | $0.00 |
| Butler & Associates, PA | $42.00 | Paid | $0.00 |

disclosurestmt.v6

| | | | |
|---|---|---|---|
| Butler County Special Education | $17,486.00 | Paid | Claim #24 Paid Object to Claim |
| Calvin Dean Homolka II | $120.00 | Paid | $0.00 |
| Cascade DAFO Inc. | $120.00 | Paid | $0.00 |
| Chartis US | Unscheduled | Unpaid | Claim #49 Object to as contingent, unliquidated. Liquidated amount due is $0.00 |
| Child Start, Inc. | $35,230.00 | Paid | $0.00 |
| Christi and/or Clay Rothwell | $114.00 | Paid | $0.00 |
| City of Wichita Water/Sewer | $2,710.00 | Paid | $0.00 |
| Colonial Supplemental Ins. Co. | $131.00 | Paid | $0.00 |
| Communities in Schools | $9,110.00 | Paid | $0.00 |
| Contract Furnishings Wichita | $3,473.00 | Unpaid | Claim #45 $3,473.00 Allow $3,473.00 |
| Countryside Lawn & Treecare | $7,193.00 | Unpaid | Claim #39 $6,902.41 Allow $6,902.41 |
| Cox Communications KS | $5,476.00 | Paid | Claim #48 Object to as paid |
| Custom Concepts, LLC | $2,445.00 | Unpaid | Allow $2,445.73 |
| Dawn Schneider | $61.00 | Paid | $0.00 |

disclosurestmt.v6

| | | | |
|---|---|---|---|
| Delta Dental Plan of KS, Inc. | $8,080.00 | Paid | Claim #1 Object claim satisfied |
| Docuplex Graphics | $10,354.00 | Unpaid | Claim #2 $20,037.84 Allow $20,037.84 |
| EH Technical Solutions | $4,621.00 | Unpaid | Allow $4,621.00 |
| El Dorado Chamber of Commerce | $100.00 | Unpaid | Allow $0.00 |
| EMPAC, Inc. | $2,005.00 | Paid | $0.00 |
| Emprise Bank | $2,363,470.00 | Partial payment made | Claim #6 $2,359,771.96 Allow $2,326,167.00 as secured claim |
| Erin Crabtree | $115.00 | Paid | $0.00 |
| Extra Space Storage of Wichita | $137.00 | Paid | $0.00 |
| Fahnestock Heating & Air | $67.00 | Unpaid | Allow $67.00 |
| FedEx | $39.00 | Paid | $0.00 |
| Fonda Barr | $391.00 | Paid | $0.00 |
| For the Families, LLC | $65.00 | Unpaid | Allow $65.00 |
| Foulston Siefkin, LLP | $2,407.00 | Unpaid | Allow $2,407.00 |
| Futures Unlimited, Inc. | $1,178.00 | Paid | $0.00 |
| George Bowerman & Noel, PA | $4,425.00 | Forgiven | $0.00 |

disclosurestmt.v6

| | | | |
|---|---|---|---|
| GN Otometrics North America | $7,229.00 | Paid | $0.00 |
| Good Samaritan Health Ministries | $1,250.00 | Paid | Claim #13 Object to as paid |
| Gordon N. Stowe & Associates | $220.00 | Paid | $0.00 |
| Gorges & Company | $3,994.00 | Lease obligations for 2 automobiles | Claim #19 $36,483.81 Allow The debtor rejected one lease, assumed the other and is current on the assumed lease obligation. Claim #20 $30,294.44 Claim amount on lease deficiency payment subject to verification |
| Gossen Livingston Associates | $50.00 | Unpaid | Allow $50.00 |
| Greater Wichita YMCA | $27,982.00 | Paid | $0.00 |
| HealthTec Software, Inc. | $2,132.00 | Paid | $0.00 |
| Home Depot Credit Svs | $22.00 | Unpaid | Allow $135.15 |
| Huntley's Dairy Service | $2,084.00 | Paid | $0.00 |
| Image Quest | $2,484.00 | Paid | $0.00 |

disclosurestmt.v6

| | | | |
|---|---|---|---|
| Image Quest, Inc. | $17,196.00 | Lease payments paid for 3 Canon ir 3045 copiers. | Allow $17,196.00 as Class 2 Lease assumed, 3 copiers rejected as to remainder. Debtor objects to Claim #31 in the amount of $31,210.34, the remaining amount due subject to verification |
| Image Quest, Inc. | $624.00 | Paid | Claim #34 Object to as paid |
| Institute of Supply Mgmt. | $170.00 | Unpaid | Allow $170.00 |
| Interhab | $4,449.00 | Unpaid | Allow $4,449.63 |
| Intrust Bank, NA | $4,342.00 | Paid | $0.00 |
| Intrust Card Center | $8,029.00 | Unpaid | Claim #53 $11,885.52 Allow $11,885.52 |
| IVCI, LLC | $19,479.00 | Paid | $0.00 |
| Jennifer Shain | $665.00 | Paid | $0.00 |
| Jessica Lies | $43.00 | Paid | $0.00 |
| Jessica Moreno | $127.00 | Paid | $0.00 |

disclosurestmt.v6

| | | | |
|---|---|---|---|
| Jimmy Johns | $75.00 | Unpaid | Allow $75.44 |
| KACCRRA | $45,801.00 | Paid | Claim #18 Paid claim amount $80,385.51 Object to claim |
| Kansas Gas Service | $200.00 | Paid | Claim #37 Object to as paid |
| Kansas Payment Center | $239.00 | Paid | $0.00 |
| Kansas Truck & Equipment Company, Inc. | Unscheduled | Unpaid | Claim #16 Allow $1,155.65 |
| Kansas Turnpike Authority | $114.00 | Unpaid | Claim #8 $156.54 Allow $156.54 |
| Kansas University Medical Center | $14,305.00 | Paid | $0.00 |
| Katy Tra | $40.00 | Paid | $0.00 |
| Kaye Products, Inc. | $103.00 | Paid | $0.00 |
| Kristine Cooley | $66.00 | Paid | $0.00 |
| Kroger Dillon Customer Charges | $409.00 | Paid | $0.00 |
| Kronos | $5,617.00 | Adjusted | $0.00 |
| KSCW | $80.00 | Unpaid | Allow $80.00 |
| KWCH | $270.00 | Unpaid | Allow $270.00 |
| Lakeshore Learning Materials | $378.00 | Unpaid | Allow $378.74 |

disclosurestmt.v6

| | | | |
|---|---|---|---|
| LaShawn Barber | $1,092.00 | Paid | $0.00 |
| Laurie B. Williams, Trustee | $345.00 | Paid | $0.00 |
| Leidy Plumbing & Heating Co. | $918.00 | Unpaid | Allow $918.31 |
| Levihen, LLC | $941.00 | Paid | $0.00 |
| Lisa Schulte | $1,300.00 | Paid | $0.00 |
| Little Friends Center for Autism | $160.00 | Paid | $0.00 |
| Lowes Companies, Inc. | $502.00 | Unpaid | Allow $502.00 |
| LRP Publications | $212.00 | Adjusted | $0.00 |
| Maria de la Luz Mejia | $185.00 | Paid | $0.00 |
| Maria E. Hatchett | $1,257.00 | Paid | $0.00 |
| Maria E. Hatchett | $627.00 | Adjusted | $0.00 |
| Marisela Vaquera | $771.00 | Paid | $0.00 |
| Allison Martin | $1,638.00 | Paid | $0.00 |
| Mental Health Assn of South Central Kansas | $9,254.00 | Paid | $0.00 |
| Mid-KS Community Action | $2,654.00 | Paid | $0.00 |
| Miracle Recreation Equipment | $1,837.00 | Unpaid | Allow $1,837.00 |
| Models and Images | $2,080.00 | Unpaid | Allow $2,080.00 |
| Molly Rainey | $86.00 | Paid | $0.00 |
| Natalie Barnes | $837.00 | Paid | $0.00 |
| NCO Financial Systems, Inc. | $114.00 | Paid | $0.00 |
| Oaktree Products, Inc. | $31.00 | Paid | $0.00 |

disclosurestmt.v6

| | | | |
|---|---|---|---|
| Office Depot Credit Plan | $1,406.00 | Unpaid | Claim #9 $7,311.68 Allow $7,239.51 |
| Office Equipment Finance Svs | $2,526.00 | Paid | $0.00 |
| Office Installation Co. | $783.00 | Unpaid | Allow $783.24 |
| Office Max | $1,422.00 | Unpaid | Claim #4 $1,815.22 Allow $1,815.22 |
| Pearson Business Services, Inc. | Unscheduled | Unpaid | Claim #32 Allow $923.90 |
| Philadelphia Insurance Co. | $9,863.00 | Paid | $0.00 |
| Plak Smacker | $43.00 | Unpaid | Allow $43.83 |
| PMA/Wichita OB/GYN Assoc. | $457.00 | Paid | $0.00 |
| Prairie Fire Coffee | $218.00 | Unpaid | Allow $217.88 |
| Promo Depot, Inc. | $2,339.00 | Unpaid | Claim #38 $2,371.64 Allow $2,371.64 |
| Provident Life & Accident Insurance Co. | $64.00 | Paid | $0.00 |
| Quill Corporation | $1,108.00 | Unpaid | Claim #52 $2,235.81 Allow $2,235.81 |
| Rebecca McBroom | $270.00 | Paid | $0.00 |

disclosurestmt.v6

| | | | |
|---|---|---|---|
| Ronald McDonald House | Unscheduled | Unpaid | Claim #14 in amount of $1,500.00 Subject to verification |
| Rusty Eck Ford - Quick Lane | $79.00 | Unpaid | Allow $79.00 |
| Sam's Club Direct | $6,507.00 | Paid | $0.00 |
| Savory Bites | $403.00 | Paid | $0.00 |
| Schmidt Mobile Power Wash | $320.00 | Unpaid | Allow $320.00 |
| School Specialty, Inc. | $229.00 | Unpaid | Allow $229.64 |
| SCKESC | $433,018.00 | Paid $150,000.00 | Claim #43 $501,630.18 Subject to verification |
| Sedgwick County Treasurer | $107.00 | Paid | $0.00 |
| Shawna Hinkle | $644.00 | Paid | $0.00 |
| Shields Electricon, Inc. | $948.00 | Unpaid | Allow $948.00 |
| Southwest Paper | $1,934.00 | Unpaid | Claim #23 $3,487.20 Allow $3,487.20 |
| Sumner Mental Health Center | $5,315.00 | Paid | $0.00 |
| Superior Computer Supply | $975.00 | Unpaid | Allow $975.02 |
| Target Bank | $547.00 | Unpaid | Allow $547.96 |

disclosurestmt.v6

| | | | |
|---|---|---|---|
| Target Bank | $869.00 | Unpaid | Allow $869.98 |
| Terry Morrow | $2,565.00 | Paid | $0.00 |
| The ARC of Sedgwick County | $360.00 | Paid | $0.00 |
| The Arnold Group | $344.00 | Unpaid | Claim #35 $4,121.46 Allow $4,121.46 |
| The Opportunity Project Charitable Trust | $490.00 | Paid | $0.00 |
| The Waldinger Corporation | $270.00 | Unpaid | Claim #17 $270.00 Allow $270.00 |
| UKSM-W Medical Practice Assn | $780.00 | Unpaid | Claim #33 $1,170.30 Allow $780.20 |
| United Way of the Plains | $10,052.00 | Paid | $0.00 |
| Unum Provident Life & Accident Insurance Co. | $554.00 | Paid | $0.00 |
| USD 259 | $163,000.00 | Unpaid | Claim #21 $162,958.00 Claim #30 $58,953.00 Subject to verification |
| Wal-Mart Community BRC | $7,593.00 | Unpaid | Allow $7,592.65 |
| Waste Management of Wichita | $953.00 | Paid | $0.00 |
| Wesley Medical Center, LLC | $1,541.00 | Paid | $0.00 |

disclosurestmt.v6

| | | | |
|---|---|---|---|
| Westar Energy | $9,517.00 | Unpaid | Claim #22<br>$15,345.79<br>Allow<br>$9,517.72 |
| Wichita Child Guidance Center | $10,180.00 | Paid | $0.00 |
| Wichita Children's Home | $37,284.00 | Unpaid | Claim #15<br>$46,968.67<br>Allow<br>$49,968.67 |
| Wichita Country Club Association | Unscheduled | Unpaid | Claim #12<br>Allow<br>$20,030.36 |
| Wichita State University | $27,765.00 | Paid | Claim #44<br>Object to as<br>paid |
| Wilson Darnell Mann PA | $2,332.00 | Unpaid | Claim #29<br>$2,364.69<br>Allow<br>$2,332.22 |
| Wright Express | $3,952.00 | Unpaid | Claim #50<br>$4,355.83<br>Allow<br>$4,355.83 |
| Yellow Book - West | $748.00 | Unpaid | Claim #7<br>$6,118.94<br>Allow<br>$3,375.32<br>Claim #37<br>object to as<br>duplicate |
| **Total** | $3,541,787.00 | | $2,579,262.76 |

Subsequent to the filing of the initial bankruptcy schedules, the Debtor filed a series

disclosurestmt.v6

of amendments adding additional creditors.  These additional amendments are as follows:

| Name | Original Scheduled Amount | Subsequent Status | Amount Due |
|------|---------------------------|-------------------|------------|
| Lifesaver Learning, Inc. | $300.00 | Unpaid | Claim #47 Allow $300.00 |
| Don Hattan Chevrolet | $661.72 | Unpaid | Allow $661.72 |
| Discount School Supply | $586.25 | Unpaid | Claim #41 Allow $586.25 |
| R-Quip Equipment Rental | $2,043.02 | Unpaid | Allow $2,043.02 |
| Aubrey Banks | Unknown | Paid | $0.00 |
| Denise Colvard-Shaffer | Unknown | Paid | $0.00 |
| Lori Fink | Unknown | Paid | $0.00 |
| Linda R. Moore | Unknown | Paid | $0.00 |
| Terri Speckhardt | Unknown | Paid | $0.00 |
| Linda Stepp | Unknown | Paid | $0.00 |
| Kansas Department of SRS | Unknown | Unpaid | No claim filed does not participate |
| InterLinqual Services, Inc. | Unknown | Paid | $0.00 |
| International Translations Svs | Unknown | Unpaid | Allow $240.00 |

disclosurestmt.v6

| Sign Language Interpreting Svs | Unknown | Unpaid | Claim #25 Allow $40.50 |
|---|---|---|---|
| Underground Vaults & Storage | Unknown | Paid | Claim #27 95.95 Allow $0.00 |
| Unemployment Services Trust | Unknown | Unpaid | No claim filed does not participate |
| Audra L. Kenneson | Unknown | Paid | $0.00 |
| Sara Goff | Unknown | Paid | $0.00 |
| Tammy Brown | Unknown | Paid | $0.00 |
| Pam Jones | Unknown | Paid | $0.00 |
| Angela Bowen | Unknown | Unpaid | No claim filed does not participate |
| Kathy Van Zelfden | Unknown | Unpaid | No claim filed does not participate |
| Matrix Media, Inc. dba Wichita Times | $3,075.00 | Unpaid | Claim #54 Object as late filed claim |
| Valerie Diane Greenleaf | Unknown | Paid | $0.00 |
| ADT | Unknown | Paid | $0.00 |
| Alltel | Unknown | Paid | $0.00 |

| | | | |
|---|---|---|---|
| AT&T Yellow Pages | Unknown | | No claim filed does not participate |
| Business Protection Equip Corp | Unknown | | No claim filed does not participate |
| Catholic Charities, Inc. | Unknown | Paid | $0.00 |
| Church of the Cross | Unknown | | No claim filed does not participate |
| CIRUS Water Company | Unknown | Unpaid | Allow $602.00 |
| Coffee Time | Unknown | | No claim filed does not participate |
| Cox Business | Unknown | | No claim filed does not participate |
| Ecolab | Unknown | Unpaid | Claim #36 Allow $752.34 |
| Gary Ruedebusch Inc. | Unknown | | No claim filed does not participate |
| Jae A. Pierce-Baba | Unknown | | No claim filed does not participate |

| | | | |
|---|---|---|---|
| KONE, Inc. | Unknown | Unpaid | Claim #58 Allow $328.32 |
| Pitney Bowes | Unknown | Paid | $0.00 |
| Verizon | Unknown | | No claim filed does not participate |
| Via Christi Therapy | Unknown | Unpaid | Claim #46 Allow $2,842.50 |
| Waldinger Corporation | Unknown | Unpaid | Claim #17 Allow $270.00 Claim #42 Object to as duplicate |
| Waste Management | Unknown | Paid | $0.00 |
| WSU Center for Research & Evaluation | Unknown | | No claim filed does not participate |
| WSU Dept of Psychology | Unknown | | No claim filed does not participate |
| YMCA | Unknown | | No claim filed does not participate |
| Kansas Dept of Health & Environment | Unknown | | No claim filed does not participate |

disclosurestmt.v6

| | | | |
|---|---|---|---|
| Kansas Dept of Education | Unknown | | No claim filed does not participate |
| Child Start Early Childhood Prog | Unknown | | No claim filed does not participate |
| Dept of Aging Physical Disabilities Services | Unknown | | No claim filed does not participate |
| Justice Juvenile Authority | Unknown | Unpaid | Claim #51 $16,774.00 Object claim is contingent in part Allow $2,925.00 |
| Childrens Developmental Svs | Unknown | | No claim filed does not participate |
| Sedgwick County Developmental Disability Org | Unknown | | No claim filed does not participate |
| Futures Unlimited Inc. | Unknown | Paid | $0.00 |
| USD 259 | $163,000.00 | Unpaid | Claim #21 $162,958.00 Claim #30 $58,953.00 Subject to verification |

disclosurestmt.v6

| | | | |
|---|---|---|---|
| Kansas Children Cabinet & Trust Fund | Unknown | | No claim filed does not participate |
| United Methodist Health Ministry | Unknown | | No claim filed does not participate |
| Truffles Catering | $144.60 | Unpaid | Allow $144.60 |
| LaFarge North America, Inc. | $50,897.70 | Unpaid | Claim #5 $50,897.70 Allow $50,897.70 |
| **Total** | $57,708.29 | | $62,131.95 |

To the extent that any Creditor has filed a proof of claim that may differ from the liquidated amount shown in the Debtor's schedules, the Debtor reserves the right to object to the Claim accordingly.  Any creditor shown with an unknown amount who has not filed a proof of claim shall not participate as an Unsecured Creditor, nor receive any distribution. The Claim of Emprise Bank, filed as an Unsecured Creditor, was subsequently allowed as a Secured Claim pursuant to order(s) of the Bankruptcy Court and shall be treated in Class 2 hereunder.

The Debtor estimates that there will administrative expenses due to the following:

1. Redmond & Nazar, L.L.P., Debtor's counsel, in the estimated amount of $30,000.00;

2. Foulston Siefkin LLP, special counsel, in the estimated amount of

disclosurestmt.v6

$15,000.00;

3.      South Central pursuant to the order of the Court in the estimated amount of $78,613.06;

4.      Kere Noel, CPA in the estimated amount of $8,000.00;

5.      Bothner & Bradley, marketing and public relations professional, in the estimated sum of $10,000.00;

6.      George, Bowerman & Noel, P.A., auditor, in the estimated sum of $60,000.00;

7.      Carol Houdyshell, bookkeeper and accountant, in the estimated sum of $3,000.00.

There will be priority Claims due as follows:

1.      Taxes;

2.      Employee reimbursement expenses.

Secured Claims will be due as follows:

1.      Emprise Bank and its loan participants in the sum of $3,800,000.00, less sale proceeds estimated Claim amount $2,350,000.00.

## X.  SUMMARY OF ASSETS

The following represents the Debtor's estimate of the value of the assets as of the date of the filing of this Disclosure Statement (utilizing November 30, 2009 financial information):

disclosurestmt.v6

Real Estate, including operating assets (secured):

| | |
|---|---|
| 2258 North Lakeway Circle | $1,897,514.00 |
| 3323 North Oliver | $5,322,940.00 |
| 251 South Whittier | $  817,772.00 |
| 340 South Broadway | $  990,420.00 |
| Cash in bank (secured cash collateral) | $   250,000.00 (est) |
| Vehicles and busses | $  288,786.00 |
| Machinery, fixtures, equipment & supplies | $  101,996.00 |
| Pledge receivables | $  462,164.00 |
| Inventory | $      3,689.00 |

The Debtor proposes to treat Emprise Bank and its Loan Participants as fully secured and will be paid in full, including post-petition interest and allowed attorneys' fees under 11 U.S.C. §506(b), the allowed amount of its Secured Claim.  Emprise Bank filed a proof of claim in the amount of $2,359,771.96 (Claim #6), which does not include the secured post-petition loan advance of $1,500,000.00.  For purposes of the treatment of Emprise Bank as a secured Creditor, Emprise Bank will be treated as fully secured to the extent of $3,859,771.96, less the net proceeds of sale of the property at 340 South Broadway, together with out parcels under the sale of which was approved by the Court [Docket #216] and the sale of the Whittier property.  The estimated Claim shall be $2,350,000.00.

disclosurestmt.v6

All Claims shall be determined for allowance or objection by the Reorganized Debtor, including any Claims set forth in the bankruptcy schedules.

## XI. SUMMARY OF THE PLAN

A.      The entire text of the Plan has been provided, with this Disclosure Statement, to all Creditors and all interest holders known to the Debtor.  The following is a brief summary of the Plan and should not be relied on for voting purposes.  The Plan should be read carefully and independently of this Disclosure Statement.  Creditors are further urged to consult with counsel, or with each other, in order to fully resolve any questions concerning the Plan.

B.      The specific treatment of each Class of Creditor is as follows:

**<u>Administrative Claims:</u>**

On the Effective Date, each Administrative Claim, that is an Allowed Claim, shall be paid in full (with the exception of the allowed Administrative Claim of South Central in the sum of $39,306.53, which shall be added to its allowed Unsecured Claim).  A total of $39,306.53 will be paid as an allowed administrative expense at the date of confirmation. The remaining Administrative Claims consist of unpaid professional fees due the following professionals:

            1.      Redmond & Nazar, L.L.P.

            2.      Foulston Siefkin LLP;

            3.      Kere Noel, CPA;

disclosurestmt.v6

    4.        Bothner & Bradley;

    5.        George, Bowerman & Noel, P.A.;

    6.        Carol Houdyshell.

## **Class 1 - Priority Claims:**

The priority Claims shall consist of the unpaid employee business reimbursements constituting a first priority unsecured obligation. As previously noted, these priority Claims have been separately satisfied.

The second priority obligations will consist of the principal and interest Claims of the Internal Revenue Service and the Kansas Department of Revenue.  The Claim of the Kansas Department of Revenue (Claim #11) may be subject to modification and subsequent allowance to be consistent with the tax returns subsequently filed by the Debtor.  The Debtor shall pay in full the allowed priority amount of the Claim within five (5) years of the Effective Date of the Plan.  The Kansas Department of Revenue has agreed to waive any Unsecured Claim.  The Claim of the Internal Revenue Service (Claim #3) in the sum of $2,419,546.60 shall be reduced by any payments made pursuant to Orders of this Court ($50,000.00) and reconciliation with the Debtor.  It shall be paid within five (5) years of the Effective Date of the Plan.  The Internal Revenue Service agrees and consents that its general Unsecured Claim, which consists of the penalty to date of petition on its unsecured priority claim (with interest thereon), will not be paid so long as the Debtor remains current on its Plan payments.  The Internal Revenue Service does not abate said

disclosurestmt.v6

penalties and expressly reserves the right to collect the penalties owed under the general

Unsecured Claim in the event that the Debtor defaults on its Plan payments.

Additionally, this Class of Creditor includes the Sedgwick County Treasurer, Claim

#10 in the amount of $282.13.

All tax obligations will be paid within five (5) years of the Effective Date of the Plan.

Any unpaid employee reimbursals will be paid within six (6) months of the Effective Date

of the Plan.

## Class 2 - Secured Claims:

The Secured Claims consist of the Claim of Emprise Bank and its Loan Participants

in the amount of $3,859,771.96, less the proceeds of sale of the property at 340 South

Broadway and the property at 251 South Whittier.  Both sales were approved by the

Bankruptcy Court. The current debt of these Creditors is $2,173,553.11, less payments

made.  The debt of Emprise Bank and its Loan Participants will be amortized over thirty

(30) years with interest calculated according to the Wall Street Journal Prime Rate, plus

one percent (1%) with a five percent (5%) floor or minimum.  The debt shall balloon within

five (5) years of the Effective Date of the Plan. Monthly principal and interest (5.75%)

payments will commence on April 1, 2010 or the Effective Date of the Plan, whichever is

later. The interest rate will be adjusted annually on the Effective Date of the Plan.  The

estimated monthly payments (assuming 5.75% interest) is the sum of $12,950.00.  In the

event any real property subject to the security interest is subsequently sold, the Proceeds

disclosurestmt.v6

shall be applied to the loan balance and the remaining debt due shall be reamortized over the remaining term of the amortization period at the then current interest rate and adjusted annually thereafter on the Effective Date.

## Class 3 - South Central

This Class consists of the unpaid installment payments that may be due South Central, consisting of the $100,000.00 payment due on or about November 15,2009, the three (3) $10,000.00 monthly payments due December 15, 2009, January 15, 2010, and February 15, 2010, and the final $20,000.00 payment due March 15, 2010.  To the extent that the case is confirmed prior to this date, these payments will be made in addition to any payments required to South Central as an allowed Unsecured Claim.  This installment obligation was previously approved by the Court [Docket #214].  The remainder of the Allowed Claim of South Central shall be treated as an Unsecured Claim in Class 4.  The amount of the claim shall be subject to verification between the parties due to the fact that South Central may have received reimbursal from third parties.

## Class 4 - Allowed Unsecured Claims

The allowed Unsecured Claims will be paid in full in semi-annual installments in April and November of each year, commencing at the next installment date following the Effective Date of the Plan, over an eight (8) year period of time.  No interest will be paid on the Unsecured Claims.   The Debtor reserves the right to treat any claim of less than Five Hundred Dollars ($500.00) to be paid in a lump sum fashion in greater than an eight

(8) year period of time.

## XII.  COMPENSATION OF INSIDERS

The Debtor is a not-for-profit corporation and, therefore, there are no officers or shareholders in the entity.  To the extent required under the provisions of the Bankruptcy Code, the following consists of the current salaries of the insiders:

| | |
|---|---|
| Hale Ritchie - Chief Restructing Officer | $      0.00 |
| Deb Voth - Chief Operating Officer | $85,215.00 |
| Kere Noel, CPA - Chief Financial Officer | $80,000.00 |

It is the intent of Mr. Ritchie to leave the Debtor shortly upon confirmation of the Plan and selection of a new Chief Executive Officer.  Ms. Voth and Mr. Noel intend to remain with the Debtor at salaries no less favorable than currently existing.

## XIII.  SALE OF NEW EQUITY INTERESTS

Due to the fact that the Debtor is a not-for-profit corporation and no equity is held by any parties, the Debtor will dispense with the sale of new equity interest for "new value" as may be required under the terms of the Bankruptcy Code, or the ruling of *In Re Bank of America National Trust and Savings Association v. 203 North LaSalle Street Partnership,* 526 U.S. 434, 119 S. Ct. 1411 (1999).

## XIV.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Plan provides for the assumption of all executory contracts not previously assumed or rejected, including Gorges Enterprises, LLC on the 2009 Volvo XC70.  The

disclosurestmt.v6

lease on the 2006 Volvo was rejected.  Payments are current to Gorges Enterprises, LLC.

The Debtor has previously assumed in part and rejected certain leases with Image Quest

as assigned to Great American Leasing Corp (Claim #31).  The Debtor believes that the

balance due Great American Leasing Corp is the sum of $17,196.00.  The Debtor hereby

assumes or has assumed the leases on three (3) Canon ir304 copiers and rejects the

remainder.  US Bancorp Business Equipment Finance Corp filed a Secured Claim, Claim

#56, for Xerox copiers.  This lease is rejected.  This creditor is the assignee of Image

Quest.

## XV.  PREFERENCES, FRAUDULENT CONVEYANCES AND OTHER CLAIMS BY DEBTOR

The Debtor has not completed a review of its payments over a period of time

covering the ninety (90) days prior to the filing of the petition for relief to non-insiders.

Because this is a full payment Plan, the Reorganized Debtor does not intend to bring any

preference actions and, upon confirmation, will waive any preference actions brought.

## XVI.  TAX ATTRIBUTES AND TAX CONSEQUENCES

The Debtor has not analyzed any tax attributes and tax consequences.  As a not-for-

profit corporation, the Debtor is required to file a tax return, but is typically not subject to

income tax liabilities.

**THE DISCUSSION SET FORTH BELOW IS INCLUDED FOR GENERAL**

**INFORMATION ONLY.  THE DEBTOR AND ITS COUNSEL AND FINANCIAL ADVISORS**

**ARE NOT MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX**

disclosurestmt.v6

**CONSEQUENCES OF CONFIRMATION AND CONSUMMATION OF THE PLAN, WITH RESPECT TO THE DEBTOR OR HOLDERS OF CLAIMS, NOR ARE THEY RENDERING ANY FORM OF LEGAL OPINION OR TAX ADVICE ON SUCH TAX CONSEQUENCES. THE TAX LAWS APPLICABLE TO CORPORATIONS IN BANKRUPTCY ARE EXTREMELY COMPLEX, AND THE FOLLOWING SUMMARY IS NOT EXHAUSTIVE. HOLDERS OF CLAIMS ARE STRONGLY URGED TO CONSULT THEIR TAX ADVISORS REGARDING TAX CONSEQUENCES OF THE PLAN, INCLUDING FEDERAL, FOREIGN, STATE AND LOCAL TAX CONSEQUENCES.**

## Federal Income Tax Consequences to Holders of Claims

The federal income tax consequences of the implementation of the Plan to a holder of a Claim will depend, among other things, upon the origin of the holder's Claim, when the holder's Claim becomes an Allowed Claim, when the holder receives payment in respect of such Claim, whether the holder reports income using the accrual or cash method of accounting, and whether the holder has taken a bad debt deduction or worthless security deduction with respect to such Claim.

## Claims for Accrued Interest

Notwithstanding the general rules described above, holders of Claims who receive any consideration under the Plan in respect of Allowed Claims for accrued but not previously taxed interest must treat the amount of such consideration as ordinary income. A holder of a Claim whose Allowed Claim for accrued and previously taxed interest is not

disclosurestmt.v6

fully satisfied generally may take an ordinary deduction for the unsatisfied portion of such Allowed Claim, even if the underlying Claim is held as a capital asset.  The proper allocation, between principal and interest, of consideration to be distributed under the Plan is unclear.  The Debtor intends to take the position that such consideration is allocated to principal, to the extent thereof, before any amount is allocated to accrued but unpaid interest.  Creditors should be aware, however, that the IRS may take a different position with respect to the proper allocation.

**HOLDERS OF CLAIMS SHOULD CONSULT THEIR OWN TAX ADVISORS ABOUT THE PROPER ALLOCATION OF CONSIDERATION BETWEEN PRINCIPAL AND INTEREST.**

**AS INDICATED ABOVE, THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY AND NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL.   THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN.  ACCORDINGLY, EACH HOLDER OF A CLAIM IS URGED TO CONSULT SUCH HOLDER'S TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.**

## XVII.  LITIGATION

Prior to the filing of the Petition for relief, the Debtor was not involved in any litigation.

disclosurestmt.v6

## XVIII.  RISK FACTORS

Introduction

This section summarizes some of the risks associated with the Plan and the Debtor's ability to comply with the terms of the Plan.  However, this analysis is not exhaustive and must be supplemented by an evaluation of the Plan and this Disclosure Statement as a whole by each holder of a Claim with such holder's own advisors.

AS SUCH, HOLDERS OF CLAIMS AGAINST THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN.  THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN, ITS IMPLEMENTATION OR ITS SUCCESS.

Bankruptcy Risks

(a)     Risks Relating to Confirmation

For the Plan to be confirmed, each Impaired Class of Creditors is given the opportunity to vote to accept or reject the Plan, except for those Classes which will not receive any distribution under the Plan and which are, therefore, presumed to have rejected the Plan.  There can be no assurance that the requisite acceptances to confirm the Plan will be received.  Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan.

disclosurestmt.v6

If one or more of the Impaired Classes vote to reject the Plan, then the Debtor may request that the Bankruptcy Court confirm the Plan by application of the "cramdown" procedures available under Section 1129(b) of the Bankruptcy Code.  There can be no assurance, however, that the Debtor will be able to use the cramdown provisions of the Bankruptcy Code to achieve Confirmation of the Plan.

If the Plan, or a Plan determined not to require resolicitation of any Classes of Claims by the Bankruptcy Court, were not to be confirmed, it is unclear what distribution holders of Claims ultimately would receive with respect to their Claims.  If an alternative Plan could not be agreed to, it is likely that holders of Claims would receive less than they would have received pursuant to this Plan.

Any objection to the Plan by a member of a Class of Claims could also either prevent Confirmation of the Plan or delay such Confirmation for a significant period of time.

(b)    Other Bankruptcy Risks

If Administrative Expense Claims or Priority Claims are determined to be Allowed in amounts greatly exceeding the Debtor's estimates, then there may be inadequate cash or other property available on the Effective Date to pay certain Claims under the Plan, and the Plan would not become effective.  The Debtor believes, however, that it will have more than sufficient cash to satisfy such Claims.

In addition, the effect, if any, that the Chapter 11 Cases may have upon any continued operations of the Reorganized Debtor cannot be accurately predicted or

disclosurestmt.v6

quantified.  Although the Debtor's reorganization and emergence from bankruptcy will eliminate some uncertainty about the Reorganized Debtor's future operations, some entities, at least initially, may be uncomfortable doing business with a company that recently emerged from Chapter 11 process.  The Chapter 11 Cases could have harmed the Reorganized Debtor's relationships with its customers, suppliers, and employees, resulting in a material adverse impact on the Reorganized Debtor's operations.

Business Risks

      (a)    Reliance on Key Personnel

    The Debtor believes that its success depends on the services of the majority of its present senior management.  If the Reorganized Debtor loses the services of its key executives, then its business could be materially adversely affected.  The Reorganized Debtor also believes that its ability to retain members of its senior management team and key personnel is critical to its future success.

Risks with Financial Projections

    The fundamental premise of the Plan is the successful implementation of the Debtor's business plan as reflected in the financial projections attached hereto. The projections are inherently uncertain and are dependent upon the successful implementation of the business plan and the reliability of the other assumptions contained therein. The projections reflect numerous assumptions, including Confirmation and consummation of the Plan in accordance with its terms, the anticipated future performance

disclosurestmt.v6

of the Reorganized Debtor, industry performance, general business and economic conditions and other matters, most of which are beyond the control of the Reorganized Debtor and some of which may not materialize.  In addition, unanticipated events and circumstances occurring subsequent to the date of this Disclosure Statement, including unanticipated changes in applicable regulations or accounting procedures, may affect the actual financial condition, results of operations and cash flows of the Reorganized Debtor in the future.

## XIX.  ALTERNATIVES TO PLAN

If the Plan is not confirmed, then one alternative would be the conversion of this Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, which would require the immediate closure and cessation of the Debtor's business operations and the liquidation of all assets of the Debtor and the Debtor's Estate by a Chapter 7 bankruptcy trustee. Due to the nature of the Debtor's business, the Debtor's assets have limited value unless they are used in connection with a going concern business.  In addition, there is growing speculation that the liquidation value of the property may be significantly less than the ongoing business value and the value attributed by the Debtor.  The Debtor's cash flow was sufficient to be able to service the debt as outlined pursuant to the cash flow attached hereto.  The Debtor believes that all Creditors will be paid in full.

The second alternative to the proposed Plan is the dismissal of the Chapter 11 case.  In that event, however, the Debtor readily anticipates that litigation will commence

disclosurestmt.v6

by Unsecured Creditors, followed by a foreclosure by Emprise Bank and its loan participants.  These consequences are exactly the types of activities that the bankruptcy process is designed to avoid.  It is only through the bankruptcy process that the Debtor's Creditors can be treated in accordance with each Creditor's respective rights.

A third alternative in the event the Plan is not confirmed is that the Debtor, a Creditor or another party in interest could attempt to formulate and propose a different Plan of Reorganization or Liquidation.  The Debtor does not believe that an alternate Plan under Chapter 11 of the Bankruptcy Code can be formulated that will provide for greater distributions to Creditors than provided for under the Plan.  Further, the Debtor believes that emergence from these Chapter 11 Cases as soon as reasonably possible is necessary for the survival and viability of the Debtor's business.  Any alternate Plan would likely take significant time to formulate and propose, would likely substantially increase the administrative expenses in the Estate as well as jeopardize the viability of the Debtor's business, and significantly delay any distributions to Creditors.

Collectively, these factors clearly evidence that the Debtor's proposed Plan is superior to a liquidation under Chapter 7 of the Bankruptcy Code, dismissal of the bankruptcy case or the filing of an alternate Plan of Reorganization or Liquidation.  The Debtor firmly believes that the Plan results in a fair balancing of all parties' rights, and again urges Creditors to vote to accept the Plan.

disclosurestmt.v6

## XX.  MISCELLANEOUS PROVISIONS

The Plan also provides that it may be modified by the Debtor or corrected prior to Confirmation Date without additional disclosure, pursuant to §1125 of the Bankruptcy Code, provided that the Court finds that such modification does not adversely affect any Creditor or Class of Creditors and is consistent with the Bankruptcy Code.  After the Confirmation Date, the Debtor may, with approval of the Court, and so long as it does not adversely affect the interests of the Creditors, remedy any defect or omission, or reconsider any inconsistencies in the Plan, or in the order of confirmation, in such manner as may be necessary to carry out the purposes and effect of the Plan.

## XXI.  TERMINATION OF THE PLAN

Upon completion of all the payments provided for in the Plan, the Plan shall terminate.

## XXII.  DISCHARGE PROVISIONS

Upon confirmation of the Plan the Debtor will be discharged pursuant to 11 U.S.C. §1141.

## XXIII.  REVESTING OF ASSETS

On the Effective Date, certain portions of property of the Estate under Section 541 of the Bankruptcy Code, as set forth herein, shall be revested in the Reorganized Debtor, free and clear of any and all Claims, debts, liens, security interests and encumbrances of any kind or type, except those Claims, debts, liens, security interests and encumbrances

disclosurestmt.v6

specifically provided for under the Plan. From and after the Effective Date, the

Reorganized Debtor may operate its business and may use, acquire and dispose of its

property free and clear of any restrictions of the Bankruptcy Code, except as otherwise

provided in the Plan or Confirmation Order. The Reorganized Debtor shall also be able

to pay any and all legal and professional fees and expenses that accrue post confirmation

without the need to seek court approval thereof. Certain other portions of property of the

Estate, as set forth herein, shall vest in the Reorganized Debtor for liquidation for the

benefit of Administrative Claims, priority Claims and Unsecured Creditors.

## XXIV.  RETENTION OF JURISDICTION

The Court, pursuant to the Plan will retain jurisdiction of the case in order to:

A.      To consider any modifications of the Plan pursuant to Section 1127 of the

        Bankruptcy Code;

B.      To hear and determine all controversies, suits and disputes, if any, which may arise

        in connection with the interpretation or enforcement of the Plan, or which may be

        required to insure compliance with the provisions of the Plan;

C.      To hear and determine any and all requests for compensation and/or

        reimbursement of expenses, made by application to the Court;

D.      To hear and determine all of the controversies, suits and disputes, if any, that may

        be pending at the time of the confirmation of the Plan, or that may arise between the

        Debtor and any Creditor of any Class, including objection to Claims and to

disclosurestmt.v6

In the United States Bankruptcy Court for the District of Kansas
IN RE:  Rainbows United, Inc.
        Bankruptcy Case No. 09-12457-11
        Disclosure Statement Dated January 29, 2010

Page 63

determine the extent to which disputed Claims shall be allowed and approved, including, but not limited to the following:

(1)     The determination of valid liens and Claims (and amounts) against the Debtor and its property;

(2)     This continuing jurisdiction, staying enforcement of any Claims or liens until consummation of this Plan;

(3)     The entering of any necessary orders requiring lienholders, judgment holders, and mortgage holders to erase and cancel their liens and mortgages from the conveyance, mortgage or other appropriate records of any county where the real estate or other property of Debtor is located, so that there will be no encumbrances on the Debtor's properties after confirmation other than Claims and liens consistent with this Plan.

E.      To allow the Debtor to enforce, after confirmation, any Claims or Causes of Action which exist in the Debtor's favor as debtor-in-possession and which may not have previously been enforced by the Debtor;

F.      To enforce the provisions of Sections 362 and 524(a) of the Bankruptcy Code; and

G.      To ensure that the intents and purposes of the Plan are fulfilled.

## XXV.  CONCLUSION

This Disclosure Statement is intended to assist each Creditor in making an informed decision regarding the acceptance of Debtor's Plan of Reorganization.  If the Plan is

disclosurestmt.v6

accepted, all Creditors will be bound by its terms.  You are, therefore, urged to carefully

review this statement and the enclosed copy of the Plan.  If questions remain after such

review, you are urged to make further inquiries as you may deem appropriate to counsel

or other Creditors.


[INTENTIONALLY LEFT BLANK]

disclosurestmt.v6

RAINBOWS UNITED, INC.


 /s/Hale Ritchie_____
Hale Ritchie, Chief Restructuring Officer



 /s/Steve Cox_____
Steve Cox, Chairman of the Board of Directors


RESPECTFULLY SUBMITTED:

REDMOND & NAZAR, L.L.P.


/s/ Edward J. Nazar_____
Edward J. Nazar, #09845
Attorney for Debtor
245 North Waco, Suite 402
Wichita, KS 67202-1117
316-262-8361 / 316-263-0610 fax
ebn1@redmondnazar.com


disclosurestmt.v6